UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2022 MSPB 25

Docket No. DC-0752-15-0954-I-1

**Daniel Moncada,**

**Appellant,**

v.

**Executive Office of the President, Office of Administration,**

**Agency.**

August 3, 2022

Debra D'Agostino, Esquire, Washington, D.C., for the appellant.

Raheemah Abdulaleem and Scott Delavega, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## OPINION AND ORDER

¶1    The agency has petitioned for review of an initial decision that mitigated the appellant's removal to a 60-day suspension. The agency also has filed a motion to dismiss this appeal for lack of jurisdiction. For the following reasons, we DENY the motion to dismiss and the petition for review, and AFFIRM the initial decision, still mitigating the removal to a 60-day suspension.

## BACKGROUND

¶2    The Office of Administration (OA), Executive Office of the President (EOP) appointed the appellant, effective September 3, 2002, to a

competitive-service position as a GS-09 Mail & Messenger Supervisor. Petition for Review (PFR) File, Tab 5 at 60. The Standard Form (SF) 50 documenting the appointment indicated that it was made from a certificate of eligibles and subject to the completion of a 1-year probationary period. *Id.* at 60, 68. On July 28, 2013, OA promoted the appellant, pursuant to 5 C.F.R. § 335.102, to the permanent GS-11 competitive-service position of Supervisory Fleet Operations Manager. Initial Appeal File (IAF), Tab 12 at 25. The approving official for the appellant's initial appointment and his promotion was the agency's Director for Human Resources Management (HRM). *Id.*; PFR File, Tab 5 at 60.

¶3        On December 26, 2013, the two employees who ordinarily processed mail containing money and other accountable items destined for the White House Complex (money mail) were absent. IAF, Tab 8 at 46. The appellant served as their backup and therefore was responsible for processing the money mail that day. *Id.* at 46-47; Hearing Transcript (HT) (Dec. 18, 2015) at 241 (testimony of the appellant). The agency subsequently discovered that money and items with a total value of $2,091.18 were missing from the December 26, 2013 money mail. IAF, Tab 8 at 46.

¶4        The U.S. Secret Service opened an investigation into the missing money mail. *Id.* at 80. Two special agents interviewed the appellant on February 20, 2014. *Id.* at 47, 80-82. In April 2014, one of the appellant's subordinates informed him that the subordinate's friend was contacted by the Secret Service about a gift card from the missing money mail. *Id.* at 49, 59; HT (Dec. 18, 2015) at 235 (testimony of the appellant). During a second interview with the Secret Service on May 20, 2014, the appellant informed them about this conversation with his subordinate. IAF, Tab 8 at 49, 58-59; HT (Dec. 18, 2015) at 235 (testimony of the appellant).

¶5        On January 31, 2014, the appellant received an email from a subordinate, containing graphic images of women. IAF, Tab 8 at 48, 126-34. The appellant verbally counseled his subordinate not to send further inappropriate emails. HT

(Dec. 18, 2015) at 225 (testimony of the appellant).  The appellant did not report the incident to anyone else, but retained the email in case his subordinate repeated the misconduct.  *Id.*

¶6        On February 19, 2014, the appellant deviated from his route while driving in a Government-owned vehicle to drop off lunch for his girlfriend.  *Id.* at 236-37, 239.  The appellant did not obtain authority for the deviation.  IAF, Tab 8 at 49. While en route, the appellant's coworker, who was a passenger in the vehicle, warned him that they were "not supposed to be doing anything personal with the vehicles."  HT (Dec. 18, 2015) at 90-91 (testimony of the appellant's coworker).

¶7        The agency removed the appellant from his position effective June 23, 2015.  IAF, Tab 8 at 20-21.  On the SF-50 documenting the removal, the agency identified the legal authority for the action as 5 U.S.C. chapter 75.  *Id.* at 20.  The decision notice indicated that the action was based on the following charges: (1) Failure to Follow Procedures (one specification); (2) Inappropriate Conduct by a Supervisor (two specifications); (3) Lack of Candor (two specifications); and (4) Unauthorized Use of a Government Vehicle (one specification).  *Id.* at 21-25, 46-49.  The events underlying these charges concerned the appellant's processing of the money mail on December 26, 2013, participation in the following Secret Service investigation, handling of his subordinate's January 31, 2014 email, and February 19, 2014 route deviation while in a Government vehicle.  *Id.* at 46-49. The deciding official noted in the removal decision that the agency's action was "reasonable and in accordance with 5 U.S.C. §§ 7512-7514, 5 C.F.R. Part 752, and OA Directive OA.438.01, *Disciplinary and Adverse Action.*"  *Id.* at 21, 27. He notified the appellant that he had the right to appeal his removal to the Board. *Id.* at 27.

¶8        On appeal, the appellant asserted that the agency lacked sufficient evidence to prove its charges and imposed a penalty that was unreasonably harsh.  IAF, Tab 1 at 5.  In its response, the agency alleged that it had met its burden of proving the charges and the reasonableness of the penalty, and indicated that the

appellant "may be considered an employee as defined in 5 U.S.C. § 7511(a)(1)." IAF, Tab 8 at 4-5, 9-14.

¶9    After finding that the Board had jurisdiction over the appeal under 5 U.S.C. §§ 7511-7513 and holding a hearing, the administrative judge mitigated the removal to a 60-day suspension, finding that the agency did not prove the Failure to Follow Procedures, Inappropriate Conduct by a Supervisor, and Lack of Candor charges. IAF, Tab 17, Initial Decision (ID) at 1, 2-21. However, he concluded that the agency proved the charge of Unauthorized Use of a Government Vehicle based on the appellant's deviation from his route on February 19, 2014. ID at 16-18. He concluded that a 60-day suspension was the maximum reasonable penalty for the sole sustained charge. ID at 18-21.

¶10    The agency has filed a petition for review of the initial decision, along with a motion to dismiss the appeal for lack of jurisdiction.[1] PFR File, Tab 3. The appellant has filed responses to the petition for review and the motion to dismiss. PFR File, Tab 5. The agency has filed replies to these responses. PFR File, Tabs 8-9.

ANALYSIS

The Board has jurisdiction over this appeal.

¶11    OA asserts, for the first time on review, that the Board should dismiss this appeal for lack of jurisdiction. PFR File, Tab 3 at 307-10. OA first contends that the right to appeal an action to the Board only applies when the action is taken by an "agency," and that OA is not an "agency" under 5 U.S.C. chapter 75. *Id.* at 309-11. OA asserts that the term "agency," for purposes of 5 U.S.C. chapter 75, means "Executive agency" as defined under 5 U.S.C. § 105, to include "an Executive department, a Government corporation, and an independent

_____

[1] The Board requested an advisory opinion from the Office of Personnel Management (OPM) regarding the jurisdictional issue in this case. PFR File, Tabs 10, 13. OPM, however, has declined to provide an advisory opinion. PFR File, Tab 15.

establishment." *Id.* at 311-12. It argues that OA is not any of these types of entities. *Id*. The agency relies upon *Citizens for Responsibility & Ethics in Washington v. Office of Administration*, 566 F.3d 219, 222-26 (D.C. Cir. 2009) (*CREW*), which held that OA was not an "agency" for purposes of the Freedom of Information Act. PFR File, Tab 3 at 313-14. The *CREW* court reasoned that, even though EOP was expressly included in the definition as an "establishment" in the Executive branch of the Government, OA lacked the "substantial independent authority" from the President that is the hallmark of such an establishment. *CREW*, 566 F.3d at 222-25; PFR File, Tab 3 at 313-14. The appellant, by contrast, asserts that 5 U.S.C. chapter 75 does not define the term "agency," and that Board jurisdiction depends solely upon whether the individual is an "employee" affected by a covered action. PFR File, Tab 5 at 30-33.

¶12    The issue of jurisdiction is always before the Board, and may be raised by either party or sua sponte by the Board at any time during a Board proceeding. *Johnson v. U.S. Postal Service*, 85 M.S.P.R. 1, ¶ 14 (1999). Thus, we address the jurisdictional issue, even though the agency did not raise it below.[2] PFR File, Tab 3 at 308-10; IAF, Tab 13 at 1-2.

---

[2] In addressing the jurisdictional issue, we have considered evidence that the appellant submitted for the first time on review in response to the agency's motion to dismiss. *See, e.g.*, *Turner v. U.S. Postal Service*, 90 M.S.P.R. 385, ¶ 5 (2001) (explaining that although the Board will not consider evidence or argument submitted for the first time on review unless the party shows that it was unavailable when the record closed below, the Board will consider such evidence and argument when an appellant was not adequately notified of what is required to establish jurisdiction); PFR File, Tab 5 at 60, 68. Here, the agency did not dispute jurisdiction below, which deprived the appellant of the opportunity to submit evidence and argument below in support of finding jurisdiction, and deprived the administrative judge of his ability to develop the record and assess the relevant information concerning this significant issue.

*The only requirements for Board jurisdiction over this appeal are that the appellant was an employee who was subjected to an appealable adverse action under chapter 75.*

¶13          It is axiomatic that the interpretation of a statute begins with the statutory language itself. *Van Wersch v. Department of Health & Human Services*, 197 F.3d 1144, 1148 (Fed. Cir. 1999). When the language provides a clear answer, the plain meaning of the statute is considered conclusive. *Id.* Pursuant to 5 U.S.C. § 7513(d), "[a]n employee against whom an action is taken under this section [governing adverse actions] is entitled to appeal to the Merit Systems Protection Board under [5 U.S.C. § 7701]." Thus, the plain language of section 7513(d) provides that the key jurisdictional requirements for a Board appeal are that an appellant is an "employee" and that the action taken is covered by the statute. As the U.S. Supreme Court has explained in analyzing the provisions of 5 U.S.C. chapter 75, "the [Civil Service Reform Act of 1978 (CSRA)] makes [Board] jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue," a proposition which the Board and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have adopted. *Elgin v. Department of the Treasury*, 567 U.S. 1, 18 (2012); *Epley v. Inter-American Foundation*, 122 M.S.P.R. 572, ¶¶ 6, 14 (2015); *see Lal v. Merit Systems Protection Board*, 821 F.3d 1376, 1378 (Fed. Cir. 2016) (holding that title 5 "limits the Board's jurisdiction over federal workers' appeals based on both the nature of the personnel action being contested and the employment status of the individual complainant"); *Todd v. Merit Systems Protection Board*, 55 F.3d 1574, 1576 (Fed. Cir. 1995) (explaining that the employee "has the burden of establishing that she and the action she seeks to appeal [are] within the [B]oard's jurisdiction"); 5 C.F.R. § 1201.3(a)(1) (indicating that the Board's jurisdiction under chapter 75 depends on the nature of the appellant's employment and the agency's action). Thus, our jurisdictional determination depends on whether the

appellant is an "employee" and whether an appealable action was taken against him. *See* 5 U.S.C. §§ 7511(a)(1), 7512.

¶14     It is undisputed that a removal is among the actions covered by the Board's chapter 75 jurisdiction. 5 U.S.C. § 7512(1) (listing removals among the actions to which chapter 75 procedures apply). Because the appellant is in the competitive service, whether he is an "employee" is governed by 5 U.S.C. § 7511(a)(1)(A). That statute defines "employee" as, among other things, an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or, with an exception not applicable here, has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less. 5 U.S.C. § 7511(a)(1)(A). The appellant meets both of the alternative definitions of "employee" under section 7511(a)(1)(A) because, when he was removed, he occupied a position in the competitive service, was not serving a probationary or trial period, and had completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less. PFR File, Tab 5 at 60; IAF, Tab 8 at 20-21, Tab 12 at 17, 25.

¶15     "Congress knows how to exempt a civil service position from the protections found in chapters 75 and 77 of title 5 if it so desires." *King v. Briggs*, 83 F.3d 1384, 1388 (Fed. Cir. 1996); *e.g.*, *Todd*, 55 F.3d at 1577-78 (finding that an employee did not have Board appeal rights because she was appointed pursuant to a statute that specifically authorized agencies to employ individuals "without regard to . . . sections . . . 7511, 7512, and 7701 of Title 5"). Contrary to OA's assertions, neither 5 U.S.C. chapter 75, nor the Board's regulations interpreting it, define the term "agency" or otherwise clearly indicate that a covered action may be appealed by an "employee" only when it has been taken by

some undefined "agency."[3]  *See* 5 U.S.C. § 7511 (defining various terms relevant to adverse employment actions); 5 C.F.R. § 1201.4 (providing general definitions of other words and phrases used by the Board).  Rather, the comprehensive statutory scheme defines the term "employee," sets forth the actions that are covered, and indicates which individuals are not covered, and thus do not have Board appeal rights, by reference to, among other things, the organizations or agencies within which an individual's position exists.[4]  *See Elgin*, 567 U.S. at 5 (describing the CSRA as "a comprehensive system for reviewing personnel action[s] taken against federal employees" (citation omitted)); *Lal*, 821 F.3d at 1378 (applying the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").  Section 7511(b) excludes certain individuals from

---

[3] As the agency notes in its petition for review, PFR File, Tab 3 at 310-11, in *Aguzie v. Office of Personnel Management*, 116 M.S.P.R. 64, ¶ 9 (2011), the Board held that the right to appeal an action under 5 U.S.C. § 7513(d) applies when the action falls under 5 U.S.C. § 7513(a), i.e., when a covered action is taken by an "agency" against an "employee."  The Board in *Aguzie* did not, however, have the benefit of the Supreme Court's decision in *Elgin*, or the Federal Circuit's decision in *Lal*, which are binding precedent on the Board.  *See Beal v. Office of Personnel Management*, 122 M.S.P.R. 210, ¶ 7 (2015) (explaining that the Board is bound by Federal Circuit precedent).  Moreover, the Board's holding in *Aguzie* was made in the context of addressing the argument by OPM that it was not the proper respondent in the appeal because it merely directed the employing agency to remove the appellant for suitability reasons, but did not actually take the action.  *Aguzie*, 116 M.S.P.R. 64, ¶¶ 10-11.  Congress has since excluded OPM suitability actions from the Board's chapter 75 jurisdiction.  5 U.S.C. § 7512(F); *Odoh v. Office of Personnel Management*, 2022 MSPB 5, ¶ 16.  We do not find *Aguzie* persuasive here.

[4] We do not address here whether the Board's jurisdiction over adverse actions taken against preference-eligible individuals in the excepted service requires jurisdiction over the "Executive agency" taking the action.  Unlike other definitions of "employee" in 5 U.S.C. § 7511, 5 U.S.C. § 7511(a)(1)(B) defines an employee with reference to either being employed in an Executive agency, the U.S. Postal Service, or the Postal Regulatory Commission.  The appellant is in the competitive service, and thus, whether he is an "employee" is determined by 5 U.S.C. § 7511(a)(1)(A), as described above. IAF, Tab 12 at 25.

coverage, not the agencies themselves. For example, individuals whose positions are within the Central Intelligence Agency, Government Accountability Office, U.S. Postal Service, Postal Regulatory Commission, Panama Canal Commission, Tennessee Valley Authority, Federal Bureau of Investigation, and certain intelligence components and activities are not covered by the subchapter and generally do not have Board appeal rights. *See* 5 U.S.C. § 7511(b)(7)-(8). There is no exclusion for employees occupying positions within OA. *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 13 (2016) (explaining that under the maxim of statutory interpretation *expressio unius est exclusio alterius*, meaning the expression of one thing is the exclusion of the other, it should not be assumed that other things that could have been listed in a statute were meant to be included; rather, the specific mention of certain things implies the exclusion of other things).

¶16     Nevertheless, 5 U.S.C. § 7511(b) carves out an exception to the definition of "employee" for individuals "whose appointment is made by the President[.]" 5 U.S.C. § 7511(b)(3). OA contends that the appellant falls within this exception because he was appointed by the President.[5] PFR File, Tab 3 at 316-18. In support of its argument, OA relies on 3 U.S.C. § 107(b)(2), which provides that the President or his designee is authorized to "employ" individuals in OA in accordance with 5 U.S.C. § 3101, which provides general employment authority

---

[5] It further asserts that the President "must have the authority to manage his staff as he sees fit and not have the Board force him to rehire OA employees." PFR File, Tab 3 at 316. It does not cite to any authority for this proposition. The agency's stated policy concerns, presented by counsel in litigation without reference to regulations, rulings, or administrative practices are not a basis to interpret 5 U.S.C. § 7513(d). *See Garza v. Office of Personnel Management*, 83 M.S.P.R. 336, ¶¶ 12-13 (1999) (declining to defer to the interpretation of a statute presented by agency counsel during litigation when its interpretation was unsupported by regulations, rulings, or administrative practice) (citing *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212-13 (1988)), *aff'd per curiam*, 250 F.3d 763 (Fed. Cir. 2000) (Table). Instead, we must apply the statute as written.

to agencies, "subject to the limitation specified in section 114 of this title," which addresses a limitation in pay. Individuals employed under 3 U.S.C. § 107(b)(2) are not specifically excepted from adverse action appeal rights, however. Additionally, section 107(b) does not indicate that the President or his designee may "appoint" individuals like the appellant. While section 107(b)(2) only authorizes the President or his designee to "employ" individuals in OA, section 107(b)(1), by contrast, authorizes him or his designee to "appoint" "without regard to such other provisions of law as the President may specify which regulate the employment and compensation of persons in the Government service," no more than five employees at rates not exceeding the current rates of basic pay for level III of the Executive Schedule, and no more than five employees at rates not exceeding the current maximum rate of basic pay for GS-18 employees. The appellant's positions were in neither of these categories.

¶17       Because the terms "appoint" and "employ" are used in the same statutory section, we find that Congress intended those terms to have different meanings, and that individuals like the appellant who are employed in OA have not necessarily been "appointed" by the President. *E.g.*, *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005) (holding that when Congress has used two distinct terms, such as "fraud" and "theft," within the same statute, "the applicable canons of statutory construction require that we endeavor to give different meanings to those different terms")[6]; *Vesser v. Office of Personnel Management*, 29 F.3d 600, 605 (Fed. Cir. 1994) (explaining that a statute must, if possible, be construed to give meaning to every word); *Brodsky v. Office of Personnel Management*, 108 M.S.P.R. 228, ¶¶ 19-20 (2008) (determining that the

---

[6] While decisions of the Federal Circuit are controlling authority for the Board, other circuit courts' decisions are considered persuasive, but not controlling, authority. *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 15 n.12 (2016). We are persuaded by the reasoning in *Soliman*.

use of two different words, "employee" and "retiree," in the same regulation indicated that they were intended to have different meanings); *Fishbein v. Department of Health & Human Services*, 102 M.S.P.R. 4, ¶ 9 (2006) (holding that 42 U.S.C. § 209(f), which uses both the words "employed" and "appointed," clearly distinguishes between the two). Thus, we decline to find in title 3 any exemption to the definition of "employee" under 5 U.S.C. § 7511(a)(1)(A) for individuals like the appellant. *See Lal*, 821 F.3d at 1381.

¶18    However, there is no explanation or definition in 5 U.S.C. § 7511(b)(3) clarifying what it means to be appointed by the President. To the extent that section 7511(b)(3) is ambiguous, the statute's legislative history provides insight into Congress's intention. *Martin J. Simko Construction, Inc. v. United States*, 852 F.2d 540, 542-43 (Fed. Cir. 1988) (holding that when "the language of a statute does not clearly state the legislature's intent," it is necessary to "look to the legislative history for an explanation of legislative intentions").

¶19    Section 7511(b)(3) was enacted as part of the Civil Service Due Process Amendments of 1990 (Amendments), Pub. L. No. 101-376, § 2, 104 Stat. 461, 461-62, by which, among other things, Congress sought to eliminate the general exclusion of nonpreference eligible excepted-service employees from "independent [Board] review." H.R. Rep. No. 101-328, at 3 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 695, 697. While extending appeal rights to certain individuals in the excepted service, the Amendments simultaneously excluded specific groups within the excepted service from coverage, including "presidential appointees." 5 U.S.C. § 7511(b)(3); H.R. Rep. No. 101-328, at 2-3, *as reprinted in* 1990 U.S.C.C.A.N. at 696-97. In explaining the exclusion, Congress noted that the bill "generally extends procedural rights to attorneys, teachers, chaplains, and scientists, but not to presidential appointees," and that "the key to the distinction between those to whom appeal rights are extended and those to whom such rights are not extended is the expectation of continuing employment with the Federal Government. Lawyers, teachers, chaplains, and

scientists have such expectations; presidential appointees and temporary workers do not." H.R. Rep. No. 101-328, at 4, *as reprinted in* 1990 U.S.C.C.A.N. at 698. Similarly, Congress explained that the bill "explicitly denies procedural protections to presidential appointees, individuals in Schedule C positions [which are positions of a confidential or policy-making character] and individuals appointed by the President and confirmed by the Senate," and that "[e]mployees in each of these categories have little expectation of continuing employment beyond the administration during which they were appointed" because they "explicitly serve at the pleasure of the President or the presidential appointee who appointed them." H.R. Rep. No. 101-328, at 4-5, *as reprinted in* 1990 U.S.C.C.A.N. at 698-99. Thus, by enacting section 7511(b)(3), we find that Congress intended to exclude from the procedural and appeal rights of 5 U.S.C. chapter 75 those individuals appointed to the excepted service by the President, who have little expectation of continuing employment beyond the administration during which they were appointed and who explicitly serve at the pleasure of the President.

¶20        Conversely, the appellant's employment spanned two presidential administrations, from 2002 through 2015. The SF-50s in this case show that he was appointed to the competitive service from a civil service certificate of eligibles and that his appointment was approved by the Director for HRM. PFR File, Tab 5 at 60, 68. The record does not identify the selecting official for this appointment. The agency promoted him to the position of Supervisory Fleet Operations Manager pursuant to 5 C.F.R. § 335.102, which concerns an "Agency['s] authority to promote, demote, or reassign" an employee, not any presidential authority. IAF, Tab 12 at 25. Thus, we find that the appellant was not appointed by the President. Absent evidence that the appellant was appointed by the OA Director, we decline to address the agency's argument that an appointment by the Director is equivalent to a presidential appointment. PFR File, Tab 3 at 318.

¶21 Our interpretation of 5 U.S.C. § 7511(b)(3) as not excluding the appellant from Board appeal rights is not only consistent with the legislative history of the Amendments, but is also consistent with OA's historical position on the appeal rights of its employees. The Presidential and Executive Office Accountability Act (PEOAA), Pub. L. No. 104-331, 110 Stat. 4053 (1996) (codified at 3 U.S.C. §§ 401-471), expanded the rights of individuals employed at the EOP. In recommending the extension of certain discrimination and labor protections to EOP employees, the House Report appeared to assume that the Board had jurisdiction over most EOP employees. *See* H.R. Rep. No. 104-820, at 40-42 (1996) (indicating that most EOP employees "are covered by Title 5 of the U.S. Code," and that "Title 5 [EOP] employees are already entitled to an administrative . . . hearing" before the Equal Employment Opportunity Commission or the Board), *as reprinted in* 1996 U.S.C.C.A.N. 4348, 4375-77.

¶22 The legislative history also includes testimony regarding H.R. 3452, the bill which became the PEOAA, from Franklin S. Reeder, then-Director of OA. Mr. Reeder explained that, "[t]he vast majority of [EOP] employees—two thirds or more—are civil service employees covered by the same protections and rights as other career executive branch employees under Title 5 of the U.S. Code." Presidential and Executive Office Accountability Act: Hearing on H.R. 3452 Before the Subcomm. on Gov't Mgmt., Info., & Tech. of the Comm. on Gov't Reform and Oversight, House of Representatives, 104th Cong. 152 (1996) (statement of Franklin S. Reeder, Director, Office of Administration, Executive Office of the President). He contrasted these employees with the remaining one third, employed "in the four offices closest to the President: the White House Office, Office of the Vice President, Office of Policy Development, and Executive Residence." As to these employees:

> By long tradition and express statutory authority, employees in these four offices have served at the pleasure of the President. As Congress mandated in the provisions of Title 3 of the United States Code, these employees are hired "without regard to any other

provision of law regulating the employment or compensation of persons in the Government service." . . . This long tradition and express statutory authority flow from the structure of the federal government established by the United States Constitution. The unfettered ability of the President to choose his closest advisers— and to choose when to dismiss them—is a necessary outgrowth of the separation and balance of the branches of government established in the Constitution.

*Id.* at 152-53. In a footnote, Mr. Reeder added:

The [OA] is also authorized by Title 3, but its employees are, by design, virtually all career civil servants hired under Title 5 authority. A small number of [OA] employees are Title 3 employees who serve at the will of the President, on the same standing as employees in the White House Office and the other three Title 3 offices. *See* 3 U.S.C. § 107(b)(1)(A). Accordingly, the Office of Administration is more properly treated as a "Title 5" agency for purposes of the applicability of employee workplace laws.

*Id.* at 152 n.1.

¶23    In later proceedings held on the PEOAA bill, the idea of creating a new entity to review EOP employee claims was abandoned, with Representative Carolyn Maloney explaining that EOP "employees already have recourse to the Merit Systems Protection Board."[7] 142 Cong. Rec. H12,283-02, H12,286 (daily ed. Oct. 4, 1996) (statement of Rep. Maloney). Furthermore, OA's own directive, OA.438.01, dated August 11, 2009, provides that OA employees like the appellant have Board appeal rights for adverse actions, such as removals. IAF, Tab 8 at 159, 163. The Board has adjudicated cases brought by OA employees in the past, and there is no indication that OA asserted therein that the Board lacked

---

[7] As the agency observes, the Veterans Employment Opportunities Act of 1998 (VEOA) extended title 5 veterans' preference rules to OA appointments. PFR File, Tab 3 at 321 (citing Pub. L. No. 105-339, § 4(b)(1), 112 Stat. 3182, 3185 (codified at 3 U.S.C. § 115(a)). In light of the longstanding recognition of the appeal rights of OA employees, such as the appellant, we are unpersuaded by the agency's argument that the VEOA extension suggests that Congress never intended the remainder of title 5 to apply to OA employees. *Id.*

jurisdiction over its employees. *See Caveney v. Office of Administration*, 64 M.S.P.R. 169 (1994); *Williams v. Executive Office of the President*, 54 M.S.P.R. 196 (1992).

¶24    For the foregoing reasons, we find that the Board has jurisdiction over this case because the appellant is an "employee" under 5 U.S.C. § 7511(a)(1)(A), and OA took an appealable action under 5 U.S.C. § 7512(1). *See* 5 U.S.C. § 7513(d).

The agency's petition for review is denied.

¶25    The agency disputes the administrative judge's findings that it did not prove the sole specification of its Failure to Follow Procedures charge, both specifications of its Inappropriate Conduct by a Supervisor charge, and specification 2 of its Lack of Candor charge. PFR File, Tab 3 at 14-21.[8]

*The administrative judge properly found that the agency did not prove the charge of Failure to Follow Procedures.*

¶26    The agency alleged that the appellant failed to follow its Mail Support Operations Division, Standard Operating Procedure 6.2, Money Mail Processing Procedure (MSOD 6.2). In particular, it alleged that the appellant did not comply with the requirement that those handling the money mail "[t]ake care to ensure all containers are secure . . . at all times" because he left the keys to the cage that contained the money mail in an unlocked safe. IAF, Tab 8 at 47, 151. The administrative judge found that the standard procedure at the time was to leave the safe containing the keys in question unlocked during the day. ID at 7. Thus, he concluded that the appellant's behavior was consistent with agency practice. *Id.* Because the agency failed to identify a procedure that the appellant failed to follow, the administrative judge found that it did not prove the charge. *Id.*

---

[8] The parties do not dispute the administrative judge's findings that the agency did not prove specification 1 of its Lack of Candor charge. ID at 11-14. Nor do they challenge the findings that the agency proved the charge of Unauthorized Use of a Government Vehicle and that this misconduct bore a direct relationship to the appellant's Federal service. ID 16-18. We decline to disturb these well-reasoned findings.

¶27      The agency reasserts on review that it proved the Failure to Follow Procedures charge because the appellant did not ensure that all money mail containers were "secure at all times" as required by MSOD 6.2. PFR File, Tab 3 at 9, 15. It relies on the fact that $2,091.18 in money mail was missing on his watch "[t]hrough either an act of commission or omission by the Appellant." *Id.* at 15. We disagree that the stated expectation in the MSOD 6.2 to ensure the security of the money mail, in general terms, is itself a procedure. We also are not persuaded that the fact that the money mail went missing is evidence of the appellant's failure to follow procedures. Rather, as the administrative judge found, the procedure followed by everyone who processed the money mail at the time was to unlock the safe containing the keys to the secured cage in the morning, move the money mail to the secured cage and lock it, and then return the keys to the unlocked safe for the remainder of the day. ID at 4-7. The agency does not dispute this finding on review. Absent evidence that the appellant violated a procedure, the agency cannot prove its charge. *See Myers v. Department of Agriculture*, 88 M.S.P.R. 565, ¶¶ 24-25 (2001) (finding the agency did not prove that the appellant failed to follow agency procedures when it provided no evidence showing how the appellant's conduct failed to conform to those procedures), *aff'd*, 50 F. App'x 443 (Fed. Cir. 2002).

> *The administrative judge properly found that the agency failed to prove its charge of Inappropriate Conduct by a Supervisor.*

¶28      In specification 1 of this charge, the agency alleged that by failing to secure the money mail, as alleged in the preceding charge, the appellant "also failed to ensure that [his] direct reports were following established procedures." IAF, Tab 8 at 48. The administrative judge found that there was no evidence supporting a link between the procedures the appellant followed on December 26, 2013, and the missing money mail. ID at 8-9. The administrative judge observed that, to the contrary, there was evidence an employee outside of the appellant's

chain of command took some of the money mail. *Id.* The agency disputes these findings. PFR File, Tab 3 at 16-17.

¶29    A supervisor cannot be held responsible for the improprieties of subordinate employees unless he actually directed or had knowledge of and acquiesced in the misconduct. *Prouty v. General Services Administration*, 122 M.S.P.R. 117, ¶ 15 (2014). The following factors are relevant to the "knowledge and acquiescence" standard: (1) the knowledge the supervisor has, or should have, of the conduct of his subordinates; (2) the existence of policies or practices within the supervisor's agency or division which relate to the offending conduct; and (3) the extent to which the supervisor has encouraged or acquiesced in these practices and/or the subordinates' misconduct. *Id.*

¶30    The agency has alleged that the appellant knew, or should have known, that his subordinate took items from the money mail. PFR File, Tab 3 at 16-17. However, this claim is supported only by the speculation of one of the Secret Service special agents who investigated the missing money mail that "[e]ither [the appellant] knew who took it . . . or he asked somebody else to do his job." *Id.* at 17 (citing HT (Dec. 18, 2015) at 54 (testimony of the Secret Service special agent)). The same special agent testified that the appellant's subordinate obtained an item from the money mail from "someone who worked in the mailroom." HT (Dec. 18, 2015) at 54 (testimony of the Secret Service special agent). Thus, it appears that, as the administrative judge found, the item was more likely taken from the agency by someone outside the appellant's chain of command. ID at 8-9. Further, as discussed above in connection with the charge of Failure to Follow Procedures, the agency has not shown that the appellant failed to comply with any procedures in processing the money mail. Therefore, the agency also has not shown that the appellant encouraged or acquiesced in any improper practices, and has not proven specification 1 of the second charge.

¶31    The agency further contends that it proved the second specification of the Inappropriate Conduct by a Supervisor charge. PFR File, Tab 3 at 17-19. This

specification concerned the appellant's alleged mishandling of a different subordinate's January 2014 misconduct of sending an inappropriate email. IAF, Tab 8 at 48, 126-34. The administrative judge found that the appellant verbally counseled his subordinate not to send future emails of this type. ID at 10; HT (Dec. 18, 2015) at 208-09 (testimony of the appellant's subordinate), 224-25 (testimony of the appellant). The administrative judge found this counseling was consistent with the guidance the appellant received from a former supervisor to be less harsh in his discipline. ID at 10-11. The agency contends the appellant's supervisor merely told the appellant to talk to people more professionally and less aggressively. PFR File, Tab 3 at 17-18.

¶32    Although the appellant's former supervisor testified that he told the appellant to talk to his subordinates more professionally and less aggressively, he also agreed that the appellant had been "too quick to try to discipline employees," and indicated that after a lot of counseling and training the appellant "changed his aggressive tone and nature toward employees." HT (Dec. 18, 2015) at 182-84 (testimony of the appellant's former supervisor). Thus, we find no error in the administrative judge's determination that the agency did not prove this specification because the appellant's actions regarding the email conformed with guidance he received and were not inappropriate.

¶33    The agency also argues that the appellant condoned his subordinate's unauthorized use of the agency's email system in violation of 5 C.F.R. § 2635.704 because the appellant failed to delete the offensive email or report it to his management team. PFR File, Tab 3 at 17-18. The regulation cited prohibits an employee from using or permitting another to use Government property for unauthorized purposes. 5 C.F.R. § 2635.704(a). It does not set forth requirements for eliminating evidence of the misconduct or reporting it up the chain of the command, as the agency appears to believe. Similarly, the agency does not provide any support for its claim that agency policy requires supervisors to maintain a record of verbal counselings. PFR File, Tab 3 at 18-19.

¶34    In addition, the agency did not charge the appellant with failing to investigate who else might have received the email. PFR File, Tabs 18-19; IAF, Tab 8 at 48. Thus, we decline to consider this argument, which the agency raises for the first time on review. IAF, Tab 11 at 7-8; *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶ 7 (2010) (explaining that the Board must review the agency's decision solely on the grounds invoked by the agency, and may not substitute what it considers to be a more appropriate basis for the action); *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

> *The administrative judge properly found that the agency failed to prove specification 2 of its Lack of Candor charge.*

¶35    As explained above, one of the appellant's subordinates told him that the Secret Service had contacted the subordinate's friend about a gift card from the missing money mail. IAF, Tab 8 at 59; HT (Dec. 18, 2015) at 235 (testimony of the appellant). The agency contends that it proved the appellant lacked candor because, as alleged in the proposed removal, the appellant was "not forthcoming" about this conversation until the Secret Service asked him 1 month later about any interactions he had with coworkers concerning the missing money mail. IAF, Tab 8 at 49; PFR File, Tab 3 at 20-21. The administrative judge found that the appellant appropriately answered the question when asked during his May 2014 interview with the Secret Service. ID at 15. Further, he found that the appellant had no reason to believe that the Secret Service would want to know about his subordinate's statement. *Id.* The agency asserts that the appellant was instructed in his February 2014 interview with the Secret Service to report if "anything related to the investigation surfaced." PFR File, Tab 3 at 20-21. Further, it observes that the subordinate in question transported the money mail. *Id.* at 21. Thus, the agency argues that he immediately should have reported his

conversation with his subordinate to the Secret Service. *Id.* The agency also asserts that the appellant should have volunteered this information during his May 2014 interview with the Secret Service. *Id.*

¶36     Lack of candor is a "broad[] and . . . flexible concept whose contours and elements depend on the particular context and conduct involved." *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 16 (2016) (quoting *Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002)). A lack of candor charge may be based on "a failure to disclose something that, in the circumstances, should have been disclosed in order to make a given statement accurate and complete." *Id.* (quoting same). Lack of candor requires proof that the employee knowingly gave incorrect or incomplete information. *Id.*, ¶ 17. We agree with the administrative judge's finding that, essentially, the appellant's failure to come forward with the information in question was not knowing. ID at 15-16.

¶37     The administrative judge found that without having the investigator's additional background knowledge, the appellant had no indication from the subordinate's statement that he had done anything wrong or was involved in the matter under investigation. ID at 15. Thus, the administrative judge found that the statement of the subordinate "would not raise any suspicion or suggest a need to make a report." *Id.* We are not persuaded that the appellant knew the Secret Service would find his subordinate's statement significant merely because he transported the money mail to the agency. HT at 35-36 (testimony of the Secret Service special agent), 61-62 (testimony of the appellant's coworker). In particular, the Secret Service's questions of the appellant during his two interviews appear to have been focused on how he processed the money mail. IAF, Tab 8 at 58-59, 80-82. There is no evidence that the special agents asked about the transportation of the mail. *Id.* Under these circumstances, the administrative judge correctly found that the agency did not prove this charge because the appellant did not know that his subordinate's statement had any

significance to the investigation.  ID at 15-15; *see Fargnoli*, [123 M.S.P.R. 330](), ¶ 18 (remanding because an administrative judge failed to make findings as to whether the appellant knew that the information he gave was not true).

>  *The administrative judge properly reduced the penalty to a 60-day suspension.*

¶38  Finally, the agency asserts that the administrative judge erred in mitigating the removal to a 60-day suspension because of the nature and seriousness of all four of the charges.  PFR File, Tab 3 at 22.  As set forth above, however, the administrative judge correctly found that the agency did not prove three of the charges.  The agency also contends that, even assuming that the other charges are not sustained, a demotion to a nonsupervisory position, along with the 60-day suspension, is a more reasonable penalty for the sustained charge of Unauthorized Use of a Government Vehicle because the appellant was a supervisor, who is held to a higher standard of conduct than nonsupervisors.  *Id.* at 22-23.

¶39  When, as here, the Board does not sustain all the charges, it will carefully consider whether the sustained charges merit the penalty imposed by the agency.  *Boo v. Department of Homeland Security*, [122 M.S.P.R. 100](), ¶ 17 (2014).  The Board may mitigate the penalty imposed by the agency to the maximum penalty that is reasonable in light of the sustained charges as long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed for fewer charges.  *Id.*  As found by the administrative judge, the deciding official did not testify as to what he thought would be an appropriate penalty for the Unauthorized Use of a Government Vehicle charge in the absence of the other charges.  ID at 20; HT (Dec. 18, 2015) at 127-75 (testimony of the deciding official).  Moreover, the decision notice does not indicate that a lesser penalty should be imposed for fewer sustained charges.  IAF, Tab 8 at 25-27.  Thus, we find that the agency has shown no error in the administrative judge's determination that, in light of the appellant's position as a supervisor, his knowledge of the policies, and a warning he received from his

coworker against personal use of the vehicle that he disregarded, a penalty greater than the statutory 30-day minimum suspension, but less than removal, was the maximum reasonable penalty for the only sustained charge. ID at 20-21; *see* 31 U.S.C. § 1349(b) (requiring a minimum penalty of a 1-month suspension for willful misuse of a Government passenger vehicle). Of particular note, the appellant consistently had received ratings of "exceeds expectations" during his 12 years of service and had no prior discipline.[9] IAF, Tab 8 at 25, 39, 51; HT (Dec. 18, 2015) at 139 (testimony of the deciding official); *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981) (listing the employee's length of service, past performance, and disciplinary record as factors to be considered in determining the appropriate penalty).

¶40 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

ORDER

¶41 We ORDER the agency to cancel the removal and substitute in its place a 60-day suspension without pay and to restore the appellant effective June 23, 2015. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

---

[9] The agency argues for the first time on review that the appellant may no longer be able to meet the requirements of his position. PFR File, Tab 3 at 13-14; IAF, Tab 11 at 5-11. In particular, it indicates that the Secret Service must give him access to the White House Complex and the Personnel Security Office must reinvestigate his security clearance. PFR File, Tab 3 at 12-14. These matters are more appropriately raised in any compliance proceedings, and we decline to address them here. *See LaBatte v. Department of the Air Force*, 58 M.S.P.R. 586, 594 (1993) (finding an agency had complied with the requirement that it restore the appellant by taking all steps necessary toward reinstating his security clearance).

¶42     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶43     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶44     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶45     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[11]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.



# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.