**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

DENISE LAVETTE HARRIS
    CAMPBELL,
            Appellant,

        v.

DEPARTMENT OF THE TREASURY,
            Agency.

DOCKET NUMBER
CH-0752-21-0458-I-1

DATE: December 12, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Terri Blanchard, Esquire, Orland Park, Illinois, for the appellant.

Russ Eisenstein, Esquire, and Pamela Langston-Cox, Esquire, Chicago,
    Illinois, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed its removal action. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision, and SUSTAIN the appellant's removal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

¶2      The following facts, as further detailed throughout this decision, are essentially undisputed. At all times relevant to this appeal, the appellant held the GS-13 position of Supervisory Revenue Officer for the Internal Revenue Service (IRS). Initial Appeal File (IAF), Tab 1 at 1. In this role, she and her subordinates provided technical guidance and support to field revenue officers regarding collection programs and activities. IAF, Tab 12 at 347. Hearing Transcript (HT) at 132-33 (testimony of the deciding official).

¶3      The appellant has a goddaughter who is particularly relevant to the instant appeal. IAF, Tab 23, Initial Decision (ID) at 2; HT at 166 (testimony of the appellant). According to the appellant, the goddaughter's mother died after a medical procedure in 1996, resulting in a $6,000,000 malpractice award and the creation of an associated trust to benefit the goddaughter. HT at 166-67 (testimony of the appellant). For many years, the goddaughter lived with her grandmother, who also served as trustee. *Id.* But in 2006, when the goddaughter was in eighth grade, she moved in with the appellant. *Id.* at 168. In 2011, the appellant also took over as trustee, following the death of the goddaughter's grandmother. IAF, Tab 13 at 16-28.

¶4      Eventually, the relationship between the appellant and her goddaughter frayed. According to the appellant, the goddaughter threatened to contact the IRS with allegations that the appellant was working as a paid tax preparer, which is prohibited for an agency employee, unless the appellant distributed more money from the trust. IAF, Tab 12 at 128; HT at 12-13 (testimony of Treasury Inspector General for Tax Administration (TIGTA) investigator), 165-66 (testimony of the appellant). The appellant contacted TIGTA to report her goddaughter's threats in March 2015. IAF, Tab 12 at 128; HT at 12-13 (testimony of TIGTA investigator), 165-66 (testimony of the appellant). This led to a TIGTA investigation, which uncovered other potential wrongdoing related to the appellant's taxes and health insurance benefits, and an IRS audit ensued. *E.g.*, IAF, Tab 12 at 127-29.

¶5      The IRS audit found that the appellant had understated her tax liabilities for 2013 and 2014 in a few ways, resulting in the appellant owing roughly $25,000 in back taxes and penalties.[2]  IAF, Tab 13 at 50-57.  Most notably, it concluded that the appellant wrongly claimed her mother, goddaughter, and goddaughter's son as dependents and wrongly claimed many thousands of dollars' worth of deductions. *Id.*  During the months that followed, the appellant filed a petition about her tax debt with the U.S. Tax Court (Tax Court), and she filed for bankruptcy.  IAF, Tab 12 at 100, Tab 13 at 44-45.  Eventually, the appellant settled her tax case for about $13,500 in back taxes and penalties.[3]  IAF, Tab 12 at 98-99, 119-21.

¶6      Meanwhile, the TIGTA investigator separately concluded that the appellant had improperly claimed her goddaughter and her goddaughter's son as her children for purposes of Federal employee health benefits.  *E.g., id.* at 128-29. He determined that this resulted in more than $50,000 in erroneous benefits paid by the insurer and more than $10,000 in erroneous premiums paid by the agency. *Id.*

¶7      In March 2021, after the conclusion of her Tax Court case, the agency proposed the appellant's removal based on three charges, each comprised of two specifications.  *Id.* at 89-95.  Broadly speaking, the first charge alleged that the appellant willfully understated her tax liability or at least failed to accurately state her tax liability and ensure the accuracy of her tax returns for 2013 and 2014.  *Id.* at 89-90.  The second charge alleged that she failed to timely pay her taxes or claimed a refund for which she was not entitled in 2013 and 2014.  *Id.* at 90.  And the third charge alleged that she claimed Federal employee health insurance benefits to which she was not entitled.  *Id.*  The appellant responded to the

---

[2] The IRS attributed the penalties to its determination that all or part of the appellant's underpayments were due to fraud.  IAF, Tab 13 at 50, 53-54 (referencing 26 U.S.C. § 6663).

[3] Without further explanation, the Tax Court decision stated that, pursuant to the settlement agreement, the appellant had income tax deficiencies of $4,089 for 2013, and $7,819 for 2014, along with a $1,563.80 penalty for 2014 under a provision unrelated to fraud.  IAF, Tab 12 at 98 (referencing 26 U.S.C. § 6662(a)).

proposal, *id.* at 31-48, but the deciding official sustained all the charges and specifications, and he removed the appellant from service, *id.* at 13-18.

¶8        The appellant filed the instant appeal to challenge her removal. IAF, Tab 1. After developing the record and holding the requested hearing, the administrative judge reversed the action. ID at 45. He first rejected the agency's arguments that collateral estoppel should apply to the Tax Court decision. ID at 5-8. He next found that the associated settlement agreement was not entitled to any evidentiary weight. ID at 9-14. The administrative judge then analyzed each of the agency's charges and found them all unproven. ID at 14-44. Finally, the administrative judge ordered that the agency provide interim relief to the appellant should either party file a petition for review. ID at 46.

¶9        The agency has filed a petition for review, along with certification that it provided the appellant with interim relief. Petition for Review (PFR) File, Tab 3. After proceeding pro se below, the appellant has appointed an attorney and filed a response. PFR File, Tab 6. The agency has replied. PFR File, Tab 11.

The administrative judge erred in discounting or overlooking certain evidence.

¶10        Before we turn to the specific charges underlying the appellant's removal, we make the following observations about the evidence of record, which is a major point of dispute. The agency in this case is also the entity responsible for administering the tax code. *E.g.*, HT at 163 (testimony of the deciding official). Consequently, when the agency conducted its years-long investigation of the appellant, it was investigating her conduct as both an employee and a taxpayer. The resulting investigatory file is evidence in this appeal. IAF, Tab 12 at 126-329. This includes the TIGTA investigator's interview notes with various individuals such as tax specialists, *id.* at 138-39, 150-51, 154, the revenue agent that audited the appellant's taxes, *id.* at 299-300, 306-08, 313, and the appellant herself, *id.* at 324-29.

¶11        Among other things, the interview notes with the revenue agent, from 2016, indicate that the appellant admitted to the revenue agent that she should not have

claimed her goddaughter and her goddaughter's son as dependents on her tax returns. *Id.* at 308. The notes were drafted by the investigator, but they indicate that the revenue agent was under oath and that the revenue agent reviewed the interview notes for accuracy. *Id.* at 308-09.

¶12      In 2017, this same revenue agent completed the IRS audit and documented the associated findings in a "Form 4549-A, Income Tax Examination Changes." *Id.* at 314-15. Consistent with that report, the IRS sent the appellant a detailed letter, assessing the appellant with the tax deficiency and penalty totaling about $25,000. IAF, Tab 13 at 50-67.

¶13      Soon thereafter, the record shows that the appellant filed a petition with the Tax Court, along with a letter disputing the finding of the IRS audit. *Id.* at 44-49. Although the letter provides some assertions about her living situation and the propriety of her tax filings, there is nothing in the record to suggest that the appellant attached other support, such as receipts, financial statements, or other such documentation. The appellant separately filed for bankruptcy in the months that followed. IAF, Tab 12 at 113.

¶14      In 2018, the agency Office of Chief Counsel attorney (OCC attorney) assigned to the appellant's tax case sent her a letter, explaining pertinent provisions of the tax code and asking the appellant to submit evidence that might support some of the disallowed exemptions and deductions. IAF, Tab 13 at 84-89. After this, she and the appellant met. HT at 91-94 (testimony of the OCC attorney). According to hearing testimony from the OCC attorney, the appellant did not bring any documents to support the disallowed exemptions and deductions she had claimed on her taxes. *Id.* at 95. The OCC attorney further testified that she and the appellant worked to come up with a settlement agreement to resolve the tax dispute. *Id*. at 94-98. However, because the appellant divulged that she had filed for bankruptcy, the OCC attorney indicated that the settlement agreement could not be signed and completed at that time. *Id*. at 97-98. Nevertheless, it is undisputed that the appellant did eventually settle the

matter. IAF, Tab 12 at 98-99. Although the settlement agreement is unsigned, it is attached to the appellant's own filings in her bankruptcy proceedings, which the agency submitted in this appeal. *Id.* at 117-21.

¶15 Also in 2018, the agency generated a new "Form 4549-A, Income Tax Examination Changes" report, which seems to reflect the parties' settlement agreement. It is signed by the office of "Appeals." *Id.* at 330-45. The amounts owed, as reflected in that document, match the amounts identified in the eventual Tax Court decision. *Id.* at 98-99, 331.

¶16 Turning back to the TIGTA interview notes, one memorializes an interview with the appellant in 2019. *Id.* at 324-29. This interview occurred after the appellant filed her petition with the Tax Court and engaged in the settlement discussions but before the Tax Court decision and the agency's proposal to remove her. According to these TIGTA interview notes, the appellant described pertinent details about some of her finances and living situations. *Id.* at 324-29. Among other things, according to the interview notes, the appellant "generously estimated" that she spent $27,000 a year on her goddaughter but that the goddaughter received $31,000 a year from her trust. *Id.* at 325. The appellant is further described as denying some other alleged wrongdoing, *id.* at 324, but admitting that it was "technically illegal" for her to claim the goddaughter and the goddaughter's son as dependents, *id.* at 326. On the other hand, the appellant also described to the TIGTA investigator feeling as if she deserved many of the exemptions and deductions she had claimed for reasons that include the nature of her relationships with the claimed dependents. *Id.* at 335-39. This interview summary also describes how the appellant had been placed under oath for the interviews, and how she reviewed the interview notes before agreeing that they were accurate. *Id.* at 324, 329.

¶17 In December 2020, the Tax Court issued its decision, recognizing that the appellant settled her tax case. IAF, Tab 12 at 98-99, 119-21. The agency proposed the appellant's removal soon after, in March 2021. *Id.* at 89-95. The

appellant's written response denied any wrongdoing. *Id.* at 31-49. The appellant attached some corresponding documentation, such as a statement about her goddaughter attending school, some of the goddaughter's mail with the appellant's address as her own, and letters about the appellant's character. *Id.* at 50.

¶18 During the proceedings below, the agency submitted all this evidence. The appellant submitted a brief argument, IAF, Tab 1 at 5, and the agency's decision to remove her, IAF, Tab 2, but nothing more. Then, during the hearing, the agency elicited testimony from the TIGTA investigator, the OCC attorney that handled the appellant's tax case, and the deciding official. HT at 3, 7-164. The appellant also testified, briefly. HT at 164-88.

*The Tax Court decision and settlement*

¶19 The agency has argued that the Tax Court decision, which is the product of a settlement between the IRS and the appellant as a taxpayer, is dispositive in this removal appeal for purposes of the appellant's tax deficiencies under the doctrines of collateral estoppel or res judicata. *E.g.,* PFR File, Tab 3 at 9-11. The administrative judge found that collateral estoppel does not apply to the Tax Court decision, based in large part on his interpretation of *United States v. International Building Company*, 345 U.S. 502 (1953). ID at 5-8. We agree with the administrative judge on this discrete point.

¶20 In *International Building*, the Court considered a dispute involving an entity's claimed depreciation of property and the resulting tax consequences over several years. 345 U.S. at 503. For some of the years at issue, after the entity also filed for bankruptcy, the parties reached a settlement agreement under which the entity owed no additional taxes. *Id.* at 503-04. Consequently, the Tax Court issued a formal decision reflecting the same. *Id.* at 504. In analyzing the matter, the Court found that this was a "pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed." *Id.* at 505. Therefore, regarding subsequent years not covered by the settlement

agreement and Tax Court decision, the Court concluded that, because there was not an adjudication on the merits, collateral estoppel did not apply. *Id.* at 506.

¶21 In dicta, the Court further noted that, "[c]ertainly the [Tax Court] judgements are res judicata of the tax claims for the [years covered by the settlement agreement], whether or not the basis of the agreements on which they rest reached the merits." *Id.* Turning back to this appeal, the agency cites that portion of *International Building* to argue that the administrative judge erred. PFR File, Tab 3 at 8-9. But it seems as if the agency is conflating collateral estoppel (issue preclusion) and res judicata (claim preclusion), each of which has its own distinct requirements. Unlike collateral estoppel, res judicata only applies if the same cause of action is involved in both cases. *Peartree v. U.S. Postal Service*, 66 M.S.P.R. 332, 337-38 (1995). In the appellant's Tax Court case, the cause of action was her tax deficiency. In this appeal, the cause of action is her removal from Federal service. Accordingly, the two cases do not involve the same cause of action, and res judicata does not apply. Collateral estoppel is also inapplicable because, as the administrative judge correctly noted, there was no adjudication on the merits as to the appellant's tax deficiencies; there was, instead, what appears to be a "pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed." *International Building*, 345 U.S. at 504-06; ID at 7; IAF, Tab 12 at 98.

¶22 Although collateral estoppel and res judicata do not apply, we find the Tax Court decision and settlement agreement relevant and material. The administrative judge erred by finding that they were entitled to no evidentiary weight. ID at 9-14.

¶23 In a comparable case, the Board found that a Tax Court decision was material evidence. *Tawadrous v. Department of the Treasury*, 110 M.S.P.R. 475 (2009). The agency removed the employee in *Tawadrous* based on charges that he had failed to properly file his tax returns over two years and failed to timely pay his tax liabilities for those years. *Id.,* ¶ 2. The administrative judge in

*Tawadrous* affirmed the agency's removal action. *Id.*, ¶ 4. However, on review, the employee submitted a written agreement he had just reached with the agency to settle his Tax Court case, along with the resulting Tax Court decision. The settlement provided that the appellant had no tax deficiencies for the first year and a deficiency and penalty of roughly $1,000 for the other year, all of which substantially differed from the deficiencies and penalties originally alleged. *Id.*, ¶¶ 15-16. Noting that this contradicted the agency's arguments and evidence in the employee's removal appeal, the Board found that this new evidence was material and, therefore, remanded the matter for the judge to consider the new evidence and issue a new decision.[4] *Id.*, ¶¶ 15-17.

¶24    We appreciate some of the administrative judge's concerns about the Tax Court decision and settlement agreement. In particular, we acknowledge that the settlement agreement included in the record does not contain the appellant's signature, and it is not recounted in full or attached to the Tax Court decision in a way that is apparent to us. However, as we noted previously, the appellant included that unsigned settlement agreement with her own bankruptcy filings. And the totals contemplated by the settlement agreement are consistent with the totals identified in the Tax Court decision, which does explicitly state that the decision is the product of settlement. Plus, we found no instance of the appellant substantively disputing the authenticity of the settlement agreement during the adjudication of this appeal.

¶25    The administrative judge otherwise gave no weight to the Tax Court decision and settlement agreement based on his conclusions that it would be improper to stipulate to questions of law, rather than fact, ID at 9-11, that Tax

---

[4] Unlike the circumstances of *Tawadrous*, where the allegations underlying the removal appeal seemed to contradict the Tax Court settlement, the allegations in the instant appeal are consistent with those of the Tax Court settlement. The specifications for the tax charges in this appeal explicitly reference the Tax Court settlement and the resulting liabilities. IAF, Tab 12 at 89-90. Therefore, while the Tax Court settlement in *Tawadrous* called into question the charges underlying that employee's removal, the opposite is true in this appeal.

Court rules prohibit the use of stipulations in other proceedings, ID at 11-12, and that the settlement agreement did not itself indicate that it was intended to bind the parties in subsequent proceedings, ID at 14. We find, however, that these considerations do not require that we altogether ignore the Tax Court decision and settlement agreement. The appellant's stipulations for her Tax Court decision and settlement agreement do not preclude the appellant from presenting contrary arguments and evidence in this appeal, and they do not preclude us from reaching a conclusion that is inconsistent with the Tax Court decision and settlement agreement, but they are evidence that we can and will consider when analyzing whether the agency met its burden.

*Other documentary and testimonial evidence presented by the agency*

¶26 In addition to the Tax Court decision and underlying settlement, the record includes other documentary evidence previously discussed. Most notably, it includes the original IRS audit, the letter to the appellant about the same, and some associated hearsay evidence in the form of investigatory interview summaries. The record also includes some relevant hearing testimony. We find that the administrative judge erred in discounting or failing to recognize these and other pieces of evidence as he analyzed the agency's allegations.

¶27 To illustrate, the administrative judge found that the agency failed to prove that the appellant's mother was not a dependent in 2013. ID at 16-17. He found that the agency did not offer *any* evidence about the amount of support the appellant provided for her mother versus the amount of support the appellant's mother received from other sources, which is relevant for purposes of claiming dependents. ID at 17. However, the appellant has herself acknowledged that her mother received Social Security benefits and paid her own rent. *E.g.*, IAF, Tab 12 at 34-35, 329, Tab 13 at 48. More importantly, the IRS audit determined, based upon an examination by tax experts who interviewed relevant parties and reviewed relevant documentation, that the appellant was not entitled to claim her mother as a dependent. *E.g.*, IAF, Tab 12 at 299, 309, Tab 13 at 59. According

to the TIGTA investigator's interview notes, the revenue agent explained that the appellant would have needed to show that she provided at least $12,000 in support of her mother per year, but she was only able to document $4,500. IAF, Tab 12 at 309. The OCC attorney testified similarly. HT at 90, 98-99, 113-14 (testimony of the OCC attorney). She explained that the appellant agreed, at least for purposes of the settlement agreement, that she was not entitled to claim her mother as a dependent under the circumstances, given the mother's living and support situations. *Id.* Although the appellant has vaguely alleged otherwise at times, asserting that she provided more than half of her mother's support, she has not presented any detailed explanation or evidence of the same. *E.g.,* IAF, Tab 12 at 35, 37, 39. And on this particular matter, the appellant offered no testimony, except to summarily assert that she supported her mother more than her mother supported herself. HT at 177 (testimony of the appellant).

¶28 Beyond that one example, the administrative judge oftentimes gave little or no weight to evidence such as the IRS audit report and TIGTA interview summaries as he analyzed the other exemptions and deductions underlying the agency's tax-related charges. To illustrate with one additional example, the administrative judge found that the agency did not offer evidence about the roughly $19,000 in disallowed deductions for 2014. ID at 21. In doing so, he acknowledged that the OCC attorney provided some testimony about the matter, but he characterized that as the agency's litigation position and not evidence. *Id.* (citing *McClain v. Office of Personnel Management*, 76 M.S.P.R. 230, 238 (1997) (providing that statements of purported fact by representatives are not evidence)). We disagree.

¶29 The OCC attorney was a sworn witness, testifying at the hearing. HT at 77-78 (testimony of the OCC attorney). Among other things, she testified about how she met with the appellant regarding the appellant's tax case, but the appellant provided no documentation to counter the IRS audit's disallowed exemptions and deductions, despite that being the point of their meeting. *Id.*

at 85-86, 91-95, 100-01. This sworn testimony is evidence, regardless of the witness's profession, and the administrative judge erred in suggesting otherwise. Moreover, as we previously recognized, the agency also presented documentary evidence about the disallowed deductions, including the IRS audit reports. *E.g.*, IAF, Tab 12 at 154, 345, Tab 13 at 57. The agency also presented the hearsay evidence previously discussed about this and other issues, from TIGTA interview summaries, which is admissible in Board proceedings and may be probative. *E.g.*, IAF, Tab 12 at 138-39, 150-51, 154, 299-300, 306-08, 313, 324-29; *see Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87 (1981) (recognizing that the probative value of hearsay evidence necessarily depends on the circumstances of each case). In finding that the agency offered no evidence about the disallowed deductions, the administrative judge erred by not recognizing the same.[5]

¶30 Regarding the roughly $19,000 in disallowed deductions, the administrative judge acknowledged that the appellant had not disputed the matter during this appeal. ID at 21. But he found that this was unimportant. *Id.* According to the administrative judge, if he were to rely on the appellant's failure to dispute the allegation, that would improperly shift the burden to the appellant. *Id.* On this point, we also disagree.

¶31 The agency does have the burden of proving its charges by preponderant evidence. *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 27 (2016). However, where the agency presents evidence about an allegation, as it has done

---

[5] It is inherent that the kinds of evidence the agency could produce for these matters is limited. To illustrate, the appellant reported more than $12,000 in charitable contributions in 2014. *E.g.*, IAF, Tab 13 at 60. On the one hand, it is difficult to imagine how the agency could prove that the appellant made no such contributions. On the other hand, the IRS audit report and testimony from the OCC attorney are precisely the kinds of evidence that would show that the appellant was not entitled to some or all of the claimed deductions for charitable contributions due to her inability to substantiate the same. *See, e.g.,* 26 U.S.C. § 170 (internal revenue code provisions for charitable contributions, including provisions about a taxpayer having to substantiate contributions to be allowed a deduction).

throughout this appeal, we may consider the appellant's failure to present arguments and evidence to the contrary. *See e.g., Hollingsworth v. Department of the Air Force*, 121 M.S.P.R. 397, ¶ 5 (2014) (recognizing that an appellant did not dispute a particular portion of the agency's allegation and, therefore, not discussing the matter any further); *Parbs v. U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 20 (2007) (recognizing that even circumstantial evidence can constitute proof by preponderant evidence when an appellant has not offered significant contrary proof), *aff'd per curiam*, 301 F. App'x 923 (Fed. Cir. 2008). The absence of specific argument and evidence by the appellant, to dispute specific tax-related allegations and associated evidence from the agency, is especially relevant in this case, where the appellant was herself a Supervisory Revenue Officer for the IRS.

*The appellant's testimony*

¶32 As a final point regarding the evidence of record, we note that the administrative judge credited the appellant's testimony about the living situation of her goddaughter in 2014, which is relevant to her claiming the goddaughter as a dependent that year. ID at 23-31. We find no basis for disturbing that finding. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (recognizing that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). We note, however, a few other aspects of the appellant's testimony, some of which we already mentioned, that the administrative judge did not rely on when making other findings of fact.

¶33 First, as mentioned earlier, the appellant is a Supervisory Revenue Officer, but she did not present the kind of documentation necessary or expected to support her claimed exemptions when confronted by the IRS audit, when facing her Tax Court case, or during this removal matter. Her testimony provided no

explanation for this absence of documentation to substantiate her tax filings, except to summarily state that some bank statements pertaining to her mother's support were not available. HT at 179 (testimony of the appellant).

¶34 Second, the appellant's testimony was mostly broad and general. To illustrate, the appellant testified that she "did help with [her goddaughter] financially" and that she "financially provided for [her goddaughter's] support." *Id.* at 168-69. But the appellant's testimony about the goddaughter's trust is difficult to follow and lacking in detail, even though the appellant was the trustee, and even though the trust reportedly held millions of dollars for the goddaughter. *Id.* at 167. At times, the appellant indicated that she did not take any money from the trust to pay for household bills or to support the goddaughter, but at other times she stated that the goddaughter received an annual distribution of $30,000 and that she gave the goddaughter money when she asked for it. *Id.* at 169-72. Further, the appellant did not explain why she would have provided the majority of support to her goddaughter and the goddaughter's son, herself, rather than using the millions of dollars in trust that was seemingly established for care of the goddaughter. The same is true of her testimony about the degree to which the appellant financially supported her mother. *Id.* at 177-78. The appellant provided no detailed explanation of the support she provided for her mother, as opposed to the support the mother received from other sources.

¶35 Third, the appellant's testimony contains no mention of the disallowed deductions. The appellant testified about the disallowed exemptions for dependents, *id.* at 166-75, 177-79, her prior discipline, *id.* at 175-77, and her bankruptcy, *id.* at 179-80, but not her disallowed deductions.

¶36 In sum, the record contains significant evidence for us to consider when analyzing the agency's charges. The administrative judge erred in overlooking or discounting much of the evidence.

The agency proved its first charge.

¶37     Having already discussed the relevant evidence, at length, our analysis of the agency's tax-related charges is straightforward.  The first charge alleged as follows:

> You willfully understated your tax liability on your Federal Income Tax return and failed to show reasonable cause for your understatement.  Even if you did not willfully understate the tax liability reflected on your return, you failed to accurately state your tax liability and ensure the accuracy of your return prior to filing.

IAF, Tab 12 at 89.  The first specification underlying this charge provided:

> You claimed a tax liability of $9,509.00 on your 2013 Federal income tax return.  On your return, you claimed a dependency exemption for [your mother and goddaughter] and a filing status of Head of Household.  As a result of an Audit and subsequent Tax Court settlement you entered into with the Internal Revenue Service concerning your 2013 Federal income tax return, you actually were not entitled to the dependency exemptions you claimed for [your mother and goddaughter] on your return and your filing status was changed from Head of Household to Single.  As a result, your tax liability for 2013 was increased by $4,089.00.

*Id.*  The second specification provided:

> You claimed a tax liability of $4,431.00 on your 2014 Federal income tax return.  On your return, you claimed dependency exemptions for [your mother, your goddaughter, and your goddaughter's son], a child tax credit for dependents, and a filing status of Head of Household.  You also claimed itemized deductions on your Schedule A for Non-Cash Contributions, Cash Contributions, and Medical and Dental Expenses.  As a result of an Audit and a subsequent Tax Court settlement you entered into with the Internal Revenue Service concerning your 2014 Federal income tax return, you actually were not entitled to the dependency exemptions you claimed for [your mother, your goddaughter, and your goddaughter's son]; you were not entitled to the child tax credit you claimed for dependents; and your filing status was changed from Head of Household to Single.  In addition, $19,161.00 of your Schedule A deductions for Non-Case Contribution, Cash Contributions, and Medical and Dental Expenses were disallowed.  You are also liable for a tax penalty under [Internal Revenue Code] § 6662(a) in the

amount of $1,563.80.  As a result, your tax liability for 2014 was increased by $7,819.00 plus a penalty of $1,563.80.

*Id.* at 89-90.

¶38    The allegations in these specifications are consistent with the terms of the settlement agreement and the Tax Court decision, which we find to be relevant evidence for the reasons already discussed.  *Id.* at 98-99, 119-20.  The allegations are further supported by other evidence, such as the IRS audit report, TIGTA interview summaries with the revenue agent, the final "Form 4549-A, Income Tax Examination Changes" report, and the testimony of the OCC attorney.[6]  *E.g.,* IAF, Tab 12 at 299-300, 306-09, 313, 330-45, Tab 13 at 50-67.

¶39    We recognize and appreciate the appellant's hearing testimony, including her discussions about the circumstances surrounding her claimed dependents.  HT at 165-87 (testimony of the appellant).  We also acknowledge other instances in which the appellant described those circumstances or her disallowed deductions, such as her letter to the Tax Court, her interview with the revenue agent, and her response to the proposed removal.  *E.g.,* IAF, Tab 12 at 31-49, 335-39, Tab 13 at 44-49.  The appellant's various statements were somewhat detailed, at times, especially as to the nature of her relationships.  However, when it came to key

_____

[6] We once again acknowledge that the investigatory interview summaries of the revenue agent contain hearsay.  In assessing the probative value of hearsay evidence, the Board has recognized the following factors:  (1) the availability of persons with firsthand knowledge to testify at the hearing; (2) whether the statements of the out-of-court declarants were signed or in affidavit form, and whether anyone witnessed the signing; (3) the agency's explanation for failing to obtain signed or sworn statements; (4) whether declarants were disinterested witnesses to the events, and whether the statements were routinely made; (5) consistency of declarants' accounts with other information in the case, internal consistency, and their consistency with each other; (6) whether corroboration for statements can otherwise be found in the agency record; (7) the absence of contradictory evidence; and (8) the credibility of declarant when he made the statement attributed to him.  *Borninkhof,* 5 M.S.P.R. at 87.  For the revenue agent, it is not apparent to us whether he was unavailable to testify, but the hearsay statements attributed to him do predate the hearing in this matter by 5 years.  In any event, at the time of the statements attributed to him, the revenue agent seems to have been a disinterested party making relatively routine assessments and statements about his audit of the appellant's tax filings, all of which are consistent with the audit reports.

questions, including the level of support she provided to the claimed dependents compared to the support they received from other sources, the appellant did not provide detailed or persuasive explanations. The appellant also presented virtually no explanation of her disallowed deductions. And, most importantly, the appellant did not present the kinds of documentary evidence or other support to counter the agency's evidence and substantiate her claimed exemptions and deductions.

¶40     Weighing all the evidence, we find that the agency has proven that the appellant did not accurately state her tax liability and ensure the accuracy of her returns for 2013 and 2014. The agency's burden of proof is preponderant evidence, i.e., the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q). The agency met that burden as to the accuracy of the appellant's 2013 and 2014 tax filings.[7]

The agency's second charge merges with its first.

¶41     The agency's second charge alleged that the appellant "failed to timely pay [her] Federal tax liability or claimed a refund of [her] Federal tax liability to which [she] was not entitled." IAF, Tab 12 at 90. Although we need not recount the associated specifications word for word, the first alleged that her tax liability increased by $4,089 for 2013 after the audit and settlement, as compared to the appellant's own filings and claimed refund. *Id.* The second alleged that her tax

_____

[7] Because we find that the agency has proven that the appellant did not accurately state her tax liability and ensure the accuracy of her returns for 2013 and 2014, as alleged, and that this warrants the appellant's removal, we need not consider the agency's alternative basis for the charge, i.e., that the appellant acted willfully, or the agency's argument that this willfulness precludes the Board from reviewing its penalty. *See generally Ledbetter v. Department of the Treasury*, 102 M.S.P.R. 598, ¶ 9 (2006) (finding that under the IRS Restructuring and Reform Act of 1998 (RRA), Pub. L. No. 105-206, 112 Stat. 720, the Board lacks the authority to review the agency's penalty of removal for a willful violation of section 1203(b)(9) of the RRA); IAF, Tab 12 at 90-91 (describing the alternative bases for the agency's action).

liability increased by $7,819 for 2014 after the audit and settlement, as compared to the appellant's own filings claimed refund. *Id.*

¶42     The Board will merge charges if they are based on the same conduct and proof of one charge automatically constitutes proof of the other charge. *Mann v. Department of Health and Human Services*, 78 M.S.P.R. 1, 7 (1998). In this case, proof of the specifications underlying the first charge automatically constitutes proof of the specifications underlying the second. The charges are, therefore, merged. The fact that one charge has been merged into another does not, however, mean that the duplicative charge is not sustained, or that the appellant's misconduct somehow becomes less serious by virtue of the merger. *Shiflett v. Department of Justice,* 98 M.S.P.R. 289, ¶ 12 (2005).

Removal is a reasonable penalty for the tax-related charges.

¶43     In addition to the tax-related charges, the agency also charged the appellant with improperly adding her goddaughter and goddaughter's son to her Federal employee health insurance plan. The administrative judge found that the agency did not prove this charge because there was no evidence setting out the criteria for who could and who could not be added to an employee's health plan. ID at 42-44. The agency argues otherwise, but we find it unnecessary to decide that issue because the tax charges suffice to sustain the appellant's removal. *See, e.g., Leach v. Department of Veterans Affairs*, 107 M.S.P.R. 229, ¶ 10 (2007) (finding that the Board need not address one charge because the other brought by the agency supported the employee's removal).

¶44     Because we have not considered the agency's third charge, it is appropriate for penalty determination purposes to consider this to be an appeal in which not all charges were sustained. *Id.*, ¶ 13. When the Board does not sustain all the charges, it will carefully consider whether the sustained charges merit the penalty imposed by the agency. *Moncada v. Executive Office of the President*, 2022 MSPB 25, ¶ 39. The Board may mitigate the penalty imposed by the agency to the maximum penalty that is reasonable in light of the sustained charges as

long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed for fewer charges. *Id.*

¶45    In this case, the deciding official explicitly stated that the tax-related charges warranted the appellant's removal, by themselves, even if the appellant did not act willfully in understating her tax liabilities.  IAF, Tab 12 at 16.  He did so in the decision letter, which contains his *Douglas* analysis.  *Id.* at 13-16; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors that may be relevant when assessing the reasonableness of a penalty).  We agree.

¶46    Even if she did not act willfully, the appellant's understatements of her tax liabilities in multiple ways over multiple years are serious and "in direct conflict with the mission of the Service."  IAF, Tab 12 at 15.  Although we have not decided whether the appellant's understatements were willful, we cannot help but find that they were at least reckless.  The appellant's position only magnifies this because the appellant's duties were directly related to tax compliance, yet she claimed tens of thousands of dollars' worth of exemptions and deductions without the ability to substantiate the same.  Plus, the appellant held a supervisory position, and supervisors can be held to a higher standard of conduct.  *E.g., id.* at 346-49; *see Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 21 (recognizing that an agency has the right to expect a higher standard of conduct from a supervisor because they occupy positions of trust and responsibility).

¶47    We further note that this disciplinary action follows two others for the appellant, each of which involved financial misconduct involving her government travel card.  IAF, Tab 12 at 15, Tab 13 at 40-42, 93.  Under the agency's table of penalties, a third offense calls for a penalty ranging from a 15-day suspension to removal.  IAF, Tab 13 at 361.  The table further states that, for even an unintentional understatement of taxes, "[m]ore severe penalties should be

considered when the position of the employee is directly related to tax administration." IAF, Tab 12 at 361.

¶48    Though not mentioned in the decision letter or the deciding official's hearing testimony, we recognize that the appellant had about 30 years of service. IAF, Tab 12 at 12. We also recognize and appreciate the stressors the appellant experienced during the relevant period, such as the tumultuous relationship between her and her goddaughter. *E.g.,* HT at 170-71, 173-75 (testimony of the appellant). However, mitigating factors weighing in the appellant's favor do not outweigh those that support her removal. *Compare Jenkins v. Department of the Treasury*, 104 M.S.P.R. 345, ¶¶ 3, 16 (2007) (finding that removal was a reasonable penalty for failing to timely and properly file a tax return where, inter alia, the IRS employee had received two prior disciplinary actions), *with Gaudin v. Department of the Treasury*, 109 M.S.P.R. 301, ¶¶ 2, 9-16 (2008) (mitigating an employee's removal to a demotion where, inter alia, their understatement of tax liability was unintentional, they otherwise had a stellar history of performance with no prior discipline, and some of the most serious specifications were unproven).

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: 　　　　　　　　　*Jennifer Everling*
　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　Jennifer Everling
　　　　　　　　　　　　　　　Acting Clerk of the Board

Washington, D.C.