**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SARAH K. FOX,<br>            Appellant, | DOCKET NUMBER<br>DC-1221-23-0122-W-1 |
| v. | |
| DEPARTMENT OF COMMERCE,<br>            Agency. | DATE: November 20, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Sarah K. Fox, Stoughton, Massachusetts, pro se.

Kirsten Z. Kuitu, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and
did not participate in the adjudication of this appeal.

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      During the period at issue in this appeal, the appellant was employed in various positions as a Foreign Service Officer within the U.S. and Foreign Commercial Service (Commercial Service) branch of the International Trade Administration (ITA).  Initial Appeal File (IAF), Tab 1 at 1, Tab 5 at 4-5.  In July 2019, she was assigned as the Principal Commercial Officer, FS-02, at the U.S. Consulate General in Calgary, Canada.  IAF, Tab 1 at 1, 9.  In August 2019, the appellant discovered that the agency's computer server and server backup tapes were being housed in an unsecured kitchen area and reported the discovery to her supervisory chain.  IAF, Tab 5 at 18-30.  After further discussion with her supervisory chain and agency information technology (IT) officials, arrangements were made for the backup tapes to be sent to an agency office in Washington, D.C., for processing and for the server to be relocated to a secure area.  *Id.* However, although 35 server tapes were originally sent to Washington D.C., only 27 of the tapes were ever actually received.  *Id.* at 40-65.

¶3      On November 30, 2022, the appellant filed the instant IRA appeal alleging that the agency curtailed her overseas tour of duty, denied her a detail opportunity, and harassed her in retaliation for her protected disclosures regarding IT security concerns.  IAF, Tab 1 at 4, 6.  She requested a hearing on her appeal.  *Id.* at 2.  With her appeal, the appellant provided a copy of a close-out letter from the Office of Special Counsel (OSC) dated September 26, 2022.  *Id.* at 9.

¶4      The administrative judge issued a jurisdictional order apprising the appellant of the applicable law and burden of proof requirements for an IRA appeal and instructing her to submit evidence and argument establishing Board jurisdiction over her appeal.  IAF, Tab 3.  The administrative judge directed the

appellant to file a statement that detailed each of her alleged protected disclosures or activities and retaliatory personnel actions, identified the dates on which she made the disclosures or engaged in the activities and to whom she made her disclosures, and provided an explanation for how she exhausted each specific claim with OSC. *Id.* at 7.

¶5 After the parties submitted their jurisdictional pleadings, IAF, Tabs 5-6, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction, IAF, Tab 8, Initial Decision (ID) at 1, 17. She determined that the only disclosures that the appellant exhausted were her disclosures of retaliation, sexism, and racism to OSC and the Equal Employment Opportunity Commission (EEOC) in December 2019. ID at 6-12. Alternatively, the administrative judge concluded that even if the appellant exhausted her administrative remedies as to her remaining alleged protected disclosures with OSC, she failed to nonfrivolously allege that her disclosures concerned the type of wrongdoing described under 5 U.S.C. § 2302(b)(8). ID at 13-17. As to the appellant's December 2019 OSC and EEOC disclosures, the administrative judge considered whether these disclosures were protected activities within the scope of 5 U.S.C. § 2302(b)(9)(A)(i). ID at 12-13. She concluded that these disclosures were not protected activities because the appellant did not raise a claim of reprisal for whistleblowing to OSC or the EEOC. ID at 13.

¶6 The appellant has timely filed a petition for review of the initial decision and a supplement to her petition for review. Petition for Review (PFR) File, Tabs 1-2. The agency has filed a response in opposition to the petition for review. PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7 On review, the appellant argues that she contacted OSC regarding her alleged whistleblowing activity in 2019 and exhausted her complaints with OSC "multiple times at multiple levels," and that the administrative judge erred by

finding that she failed to exhaust her administrative remedies.  PFR File, Tab 1 at 4-6.  The appellant also alleges that the initial decision inaccurately recounted the timeline of events and requests a "full review" of her claims alleging retaliation for her disclosures of fraud, waste, abuse, and IT security issues.  *Id.* at 6-7.  Finally, the appellant alleges that new and material evidence exists regarding her claims, and she provides copies of two documents with her petition for review.  *Id.* at 5, 8-29.  She also attaches additional documents with her first supplemental petition for review pleading and submits a second and third supplemental petition for review, as well as a motion for leave to file an additional pleading.  PFR File, Tabs 2, 5, 10, 12.

We grant the agency's motion to strike the appellant's second supplement to her petition for review and deny the appellant's motion for leave to file an additional pleading.

¶8        The agency has filed a motion to strike the appellant's second supplement to her petition for review, observing that although the petition for review acknowledgment letter granted the appellant's request for an extension of time to file a second supplement to her petition for review on or before September 1, 2023, the appellant did not do so until September 6, 2023, and did not provide an explanation for her untimeliness or seek leave from the Clerk of the Board to file the untimely pleading.  PFR File, Tab 3 at 1, Tab 6 at 5.  A late filed pleading must be accompanied by a motion that shows good cause for the untimely filing unless the Board has specifically granted an extension of time or a motion for an extension is pending.  5 C.F.R. § 1201.114(g).  The party filing the motion must provide an explanation of the reasons for failing to request an extension, accompanied by supporting documentation or other evidence.  *Id.*  The appellant has failed to explain why she was unable to timely file or request a further extension of time to file her second supplement to her petition for review.  Accordingly, we grant the agency's motion and strike the untimely second

supplement to the appellant's petition for review and have not considered it in reaching our decision in this matter.

¶9 Additionally, on April 3, 2024, after the record closed on review, the appellant filed a request for leave to file an additional pleading alleging that she had new evidence regarding "adverse actions of intimidation, coercion, and harassment" by her agency. PFR File, Tab 10 at 3. She alleged that the new pleading was necessary to "underscore[] and demonstrate[] the unfettered retaliation of whistleblowers" at the agency and asserted that the evidence was not available before the record closed in her appeal. *Id.* Based on the appellant's representations in her pleading, it appears that the purportedly new evidence relates to actions taken by the agency that postdate the filing of her Board appeal and thus could not have been exhausted in her complaint to OSC at issue in this IRA appeal. *Id.* As such, the appellant has not explained how this purportedly new evidence is relevant to the issue of Board jurisdiction over her IRA appeal. *See Cleaton v. Department of Justice*, 122 M.S.P.R. 296, ¶ 7 (2015) (explaining that the Board will not consider evidence submitted for the first time on review absent a showing that the evidence is of sufficient weight to warrant an outcome different from that of the initial decision), *aff'd*, 839 F.3d (Fed. Cir. 2016). Consequently, we conclude that she has not demonstrated that any such evidence is material to her appeal, and we DENY her request for leave to file an additional pleading. *See* 5 C.F.R. § 1201.114(a)(5), (k).

The appellant exhausted her remedy with OSC regarding all of her disclosures and activities and one personnel action.

¶10 To establish Board jurisdiction over an IRA appeal, an appellant must exhaust her administrative remedies before OSC and make nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel

action as defined by 5 U.S.C. § 2302(a)(2)(A). *See Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 5, 10, 14. An appellant in an IRA appeal must prove by preponderant evidence that she exhausted her administrative remedies by seeking corrective action from OSC before seeking corrective action from the Board. 5 U.S.C. § 1214(a)(3); *Chambers*, 2022 MSPB 8, ¶¶ 10-11; 115 C.F.R. § 1201.57(c)(1). "[T]he Board's jurisdiction . . . is limited . . . to those issues that were previously raised with OSC." *Chambers*, 2022 MSPB, ¶ 10 (quoting *Miller v. Merit Systems Protection Board*, 626 F. App'x 261, 267 (Fed. Cir. 2015)).

¶11 The substantive requirements of exhaustion are met when an appellant provides OSC with a sufficient basis to pursue an investigation; however, an appellant may give a more detailed account of her whistleblowing activity before the Board than she did to OSC. *Chambers*, 2022 MSPB 8, ¶ 10 (citing *Briley v. National Archives and Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001)). An appellant may demonstrate exhaustion through her initial OSC complaint, correspondence with OSC, or other sufficiently reliable evidence, such as an affidavit or declaration attesting that she raised with OSC the substance of the facts in the MSPB appeal. *Id.*, ¶ 11. An appellant's unrebutted attestation on her Appeal Form that she raised with OSC the substance of the facts in her appeal is sufficient to prove exhaustion. *See id.*, 2022 MSPB 8, ¶ 11 n.7.

¶12 In the initial decision, the administrative judge summarized the appellant's appeal as alleging that she was subjected to retaliatory personnel actions in reprisal for the following protected disclosures or activities: her disclosure of possible violations of IT security policies to her supervisory chain starting around August 7, 2019 (disclosure 1); her disclosure of the same possible IT security issues to the agency's Office of the Inspector General (OIG) in May 2020 (disclosure 2); her disclosure of the potential theft of the server backup tapes to her supervisory chain on or around January 23, 2020 (disclosure 3); and her

complaints to OSC, through the equal employment opportunity (EEO) process, and to the OIG starting in late 2019 (disclosure/protected activity 4).  ID at 5.

*Disclosures 1 and 3*

¶13    For disclosure 1, the administrative judge determined that although the appellant described the nature of this disclosure in her IRA appeal as alleging "possible violations of IT security policies . . . to her supervisory chain," OSC's close-out letter identified only OSC, the EEOC, the agency's EEO office, and the OIG as the parties to whom she made that disclosure.  ID at 6.  For disclosure 3, the appellant's claim that she disclosed the potential theft of the server backup tapes to her supervisory chain on or around January 23, 2020, the administrative judge determined that, as with disclosure 1, the appellant's OSC complaint did not include any allegation that she raised this disclosure with her supervisors.  As to both disclosures 1 and 3, the administrative judge also found that the appellant did not provide evidence demonstrating that she amended her OSC complaint to include her alleged supervisory disclosures, and OSC's close-out letter did not identify them.  ID at 6-7, 9-10.  As a result, the administrative judge concluded that the appellant also failed to exhaust these disclosures with OSC.  ID at 7, 10.

¶14    We disagree with these findings.  As the administrative judge observed, the section of the appellant's OSC complaint addressing the nature of her disclosures discuss her allegations of retaliation, sexism, and racism, and wrongdoing in connection with a monitoring investigation within the agency's Investigations and Threat Management Service during the period from May through June 2022.  IAF, Tab 5 at 130-31.  However, the appellant also identified that the wrongdoing she disclosed while serving in her position in Canada concerned "serious IT security issues and theft (at the very least)."  *Id.* at 132.  She also identified several officials in her supervisory chain as retaliating officials and noted that all of those officials were accused in, and aware of, her disclosures.  *Id.* at 131-32.  Later in her complaint, she again identified that she disclosed "multiple fraudulent activities, security issues, and theft at the U.S. Consulate Calgary."  *Id.* at 135.

¶15    With her Board appeal, the appellant gave additional context to these claims by providing emails demonstrating that she had disclosed the unsecured server and the lost backup tapes to numerous officials in her supervisory chain; and she reiterated in her jurisdictional response, submitted under penalty of perjury, that her complaint to OSC concerned these allegations and that agency officials retaliated against her because of her disclosure of violations of IT regulations and policies. IAF, Tab 5 at 10, 18-30, 40-65; *Chambers*, 2022 MSPB 8, ¶¶ 10-11 & n.7. Finally, as indicated in its notice to the appellant that it was terminating her inquiry, OSC recognized as one of the core issues of her complaint that she had alleged retaliation by agency officials for her disclosure of "information technology concerns at the Consulate General Calgary in 2019." IAF, Tab 1 at 9. Based on the foregoing, we find that the appellant proved that she provided OSC with a sufficient basis to pursue an investigation into her claim that she disclosed the IT security issues and the lost server backup tapes to her supervisory chain. We conclude that the appellant exhausted alleged disclosures 1 and 3.

*Disclosure 2 and disclosure/protected activity 4*

¶16    For disclosure/protected activity 4, which concerns the appellant's complaints to OSC, the OIG, and the agency's EEO office and/or the EEOC, starting in late 2019, the administrative judge determined that the appellant exhausted her administrative remedies regarding her complaints to OSC and through the EEO process starting in late 2019. ID at 10-12. We agree. As the administrative judge correctly noted, the appellant identified in her OSC complaint that she had made "multiple disclosures to OSC since 2019," and identified OSC, the EEOC, and the agency's EEO office, the Office of Civil Rights, as parties to whom she made her disclosures "since 2019 when [she] arrived at U.S. Consulate Calgary." IAF, Tab 5 at 130-31, 134. OSC also identified the appellant's "series of complaints with OSC and [the agency's] equal employment opportunity office" beginning in 2019 as matters it investigated in its September 26, 2022 close-out letter. *Id.* at 172. Accordingly,

the administrative judge correctly concluded that the appellant exhausted her administrative remedies regarding her claim that she engaged in protected activity under 5 U.S.C. § 2302(b)(9) in connection with these complaints.

¶17    Conversely, the administrative judge concluded that the appellant failed to exhaust her claim that she made a protected disclosure or engaged in a protected activity in connection with her complaint to the agency's OIG because she failed to identify whether she provided a copy of her May 29, 2020 OIG complaint to OSC or to explain the nature of the information she provided about her OIG complaint to OSC, and so OSC could not have had a sufficient basis upon which to pursue an investigation leading to corrective action.  ID at 10-11.  We disagree and instead conclude that the evidence the appellant has provided is sufficient for the purpose of proving that she exhausted this claim with OSC.

¶18    In her OSC complaint, the appellant identified the OIG as one of several entities to whom she made her protected disclosures.  IAF, Tab 5 at 131. Although the appellant did not specify the dates on which she disclosed information to the OIG in her OSC complaint, she generally identified that she had been making disclosures to the various entities "since 2019."  *Id.* at 131, 134. With her jurisdictional response, the appellant provided a June 2, 2020 email from the agency's OIG acknowledging receipt of her OIG hotline complaint on May 29, 2020, as well as a copy of the interview questions and her responses pertaining to her complaint.  *Id.* at 66-78.  She also clarified in her jurisdictional response, filed under penalty of perjury, that her complaint to the OIG concerned possible violations of IT security policies.  *Id.* at 3, 9, 13, 130-36.  Although the administrative judge identified a single reference in the appellant's jurisdictional response to an OIG complaint dated May 20, 2020, there is no other indication in the record that the appellant filed any other complaint with the OIG that was exhausted by OSC's September 26, 2022 close-out letter.[2]  IAF, Tab 5 at 13, 172.

---

[2] Given the closeness in time between the May 20, 2020 and May 29, 2020 dates, as well as the fact that the disclosures the appellant alleged she raised in relation to the purported May 20, 2020 complaint concern the exact same IT security failures as were

Accordingly, we conclude that she exhausted with OSC her protected activity of filing a complaint with the OIG on or about May 29, 2020.

¶19    The administrative judge separately considered the appellant's claim that she disclosed the IT security issues to the agency's OIG as a potential protected disclosure under 5 U.S.C. § 2302(b)(8) (disclosure 2) and as a protected activity under 5 U.S.C. § 2302(b)(9)(C) but concluded that the appellant failed to exhaust both claims. ID at 7-12. Disclosing information to an agency's OIG is protected activity under 5 U.S.C. § 2302(b)(9)(C) regardless of its content. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62. Therefore, we need not separately consider whether the appellant exhausted the disclosures she made to the OIG in her May 2020 complaint.

*Retaliatory personnel actions*

¶20    Because the administrative judge determined that the appellant failed to exhaust her claimed disclosures and activity, she did not address whether the appellant exhausted any alleged personnel actions. The Board has jurisdiction when the appellant exhausts her administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 13. Although the appellant raised a number of alleged personnel actions to OSC, the only personnel action she has raised during the course of this appeal is the September 2022 denial of a detail opportunity by the Acting Director of the U.S. Export Assistance Center (her then-first-line supervisor), with the input of the Chief of Workforce Relations and Planning (her former second-line supervisor) and the Mid-Atlantic Regional Director of ITA (her subsequent second-line supervisor). IAF, Tab 5 at 14-15, 130-36, 172. Therefore, we focus on that alleged personnel action. The appellant provided copies of emails between herself and OSC dated September 22, 2022,

identified in the copy of the May 29, 2020 OIG complaint the appellant provided with her jurisdictional response, the reference to May 20, 2020 date is more likely than not an inadvertent typographical error. IAF, Tab 5 at 9, 13, 68-78.

identifying that these officials denied her the requested detail opportunity. *Id.* at 153-56, 164-70. Further, OSC referenced the detail denial in its close-out letter. *Id.* at 172. Accordingly, we conclude that the appellant exhausted her administrative remedy with respect to the denial of a detail.[3]

¶21  In summary, we agree with the administrative judge that the appellant exhausted her administrative remedies with OSC regarding her claims that she filed a prior OSC complaint and an EEO complaint. However, we disagree with the administrative judge's finding that the appellant failed to exhaust her claim that she disclosed possible violations of IT security policies to her supervisory chain in 2019, and the potential theft of the server backup tapes to her supervisory chain on or around January 23, 2020. We also disagree with her finding that the appellant failed to exhaust her claim that she made a protected disclosure or engaged in protected activity in connection with her May 2020 OIG complaint and instead conclude that she exhausted that claim. Finally, we conclude that the appellant exhausted her claim that she was subjected to a personnel action in connection with her nonselection for a detail opportunity in September 2022.

The appellant nonfrivolously alleged that she was subjected to a personnel action.

¶22  Nonselections and decisions on details constitute personnel actions for the purpose of an IRA appeal. 5 U.S.C. § 2302(a)(2)(A)(i), (iv); *see Ruggieri v. Merit Systems Protection Board*, 454 F.3d 1323, 1325-27 (Fed. Cir. 2006) (holding that a nonselection for a position is a failure to take a personnel action under 5 U.S.C. § 2302(b)(8) within the scope of the Board's IRA jurisdiction). Accordingly, we conclude that the appellant nonfrivolously alleged that she was

---

[3] The issue of jurisdiction is always before the Board and may be raised by either party or sua sponte by the Board at any time during a Board proceeding. *Moncada v. Executive Office of the President, Office of Administration*, 2022 MSPB 25, ¶ 12. Therefore, the appellant may raise additional alleged personnel actions on remand, consistent with the administrative judge's orders. We make no findings here as to the Board's jurisdiction over any additional such alleged personnel actions.

subjected to a retaliatory personnel action when her then-first-line and second-line supervisors denied her a detail opportunity in September 2022.[4]

## The appellant nonfrivolously alleged that she made protected disclosures and engaged in protected activity.

### *The appellant nonfrivolously alleged that her disclosures concerning IT security failures were protected under 5 U.S.C. § 2302(b)(8)*

¶23    The administrative judge alternatively found that, even if the appellant exhausted disclosures 1 and 3 with OSC, she nevertheless failed to nonfrivolously allege that a reasonable person in her position would have believed her disclosures evidence any category of wrongdoing described in 5 U.S.C. § 2302(b)(8). ID at 13-17. Specifically, the administrative judge determined that the appellant's alleged disclosures of "violations of IT security policies" to various agency officials were unprotected for the following reasons: (1) her claims were broad and generalized and did not clearly implicate an identifiable violation of law, rule, or regulation, (2) the appellant raised merely hypothetical risks to the agency, she expressed her concerns equivocally, and her concerns did not rise to the level of gross mismanagement, (3) the appellant contemplated potential alternative explanations for the apparent theft of the server backup tapes, and so her "vague accusation" did not constitute a nonfrivolous allegation of a violation of a law, rule, or regulation, and (4) the appellant was unable to identify any agency policy, directive, or regulation that she believed may have been violated by the IT security issues she identified. ID at 14-17.

---

[4] In framing the allegations in her jurisdictional response, the appellant alleged both that she was subjected to a personnel action when she was "denied the opportunity to apply for a detail," and that her supervisor was personally responsible for the decision "to deny her the detail. . . ." IAF, Tab 5 at 14-15. It is unclear from the record whether the appellant actually applied for and was denied this detail opportunity, and whether her supervisor's support was required in order for her to apply for the detail. IAF, Tab 5 at 157-70. This distinction is not dispositive at the jurisdictional stage, but it may become important in determining whether the appellant proves on the merits that she suffered a personnel action.

¶24    We disagree and instead conclude that the appellant's disclosures of the improperly secured server and lost server backup tapes identified in disclosures 1 and 3 would be, if proven, protected under 5 U.S.C. § 2302(b)(8). *See* 5 C.F.R. § 1201.4(s) (defining a nonfrivolous allegation as an assertion that, if proven, could establish the matter at issue). A protected disclosure is a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 11 (2016).

¶25    The appellant alleged in disclosures 1 and 3 that the agency endangered the security and integrity of its IT systems by maintaining its computer server in an unsecured location that was accessible to non-citizens employed by the agency abroad and by handling the server backup tapes in a manner that made them susceptible to theft, resulting in several tapes being lost while in transit to Washington, D.C. IAF, Tab 5 at 5-6, 8-9, 18-30, 40-65, 123-46. The appellant broadly identified these concerns as "serious IT security issues" in her OSC complaint and provided emails with her jurisdictional response showing that she expressed similar concerns to her supervisory chain. *Id.* at 18, 132. The agency subsequently addressed her concerns by purchasing additional equipment to properly store and secure the servers and by arranging for transportation of the server backup tapes to storage for safekeeping. *Id.* at 20-30.

¶26    Although an individual must ordinarily identify the specific law, rule, or regulation that was violated in order to make a protected disclosure, the Board has nevertheless held that an individual need not identify a statutory or regulatory

provision by a particular title or number "when the employee's statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation." *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 24 (2015) (quoting, as corrected here, *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001)). The Board has held that disclosures of similar allegations of wrongdoing so obviously implicated a violation of law, rule, or regulation that the appellant was not required to identify any specific law, rule, or regulation that was violated. *See Daniels v. Department of Veterans Affairs*, 105 M.S.P.R. 248, ¶¶ 10, 12 (2007) (concluding that an appellant's disclosures outlining a number of IT security problems in her office, including password sharing, unauthorized use of data and information systems, access to the computer room by unauthorized persons, and falsification of security reports "so obviously implicate[d] a violation of law, rule, or regulation" that the appellant did not have to identify any specific law, rule, or regulation that was violated to meet her jurisdictional burden in an IRA appeal), *disagreed with on other grounds by Delgado v. Merit Systems Protection Board,* 880 F.3d 913, 923 (7th Cir.), *as amended on denial of reh'g and reh'g en banc* (7th Cir. 2018); *DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999) (acknowledging that some allegations of wrongdoing, such as theft of Government property, so obviously implicated a violation of law, rule, or regulation, that an appellant need not identify any particular law, rule, or regulation). Accordingly, we conclude that the appellant could have reasonably believed that her disclosures concerning the improper storage and transportation of the agency's IT systems described in disclosures 1 and 3 evidenced potential violations of laws, rules, or regulations, and so she nonfrivolously alleged that she made protected disclosures under 5 U.S.C. § 2302(b)(8) in connection with these claims.

*The appellant nonfrivolously alleged that her December 2019 OSC complaint and her May 2020 OIG complaint constituted protected activity under 5 U.S.C. § 2302(b)(9)(C)*

¶27    In concluding that the appellant failed to meet her jurisdictional burden regarding her claim that the agency retaliated against her because of her OIG and OSC complaints, the administrative judge considered the content of those disclosures. ID at 10-13. We reach a different conclusion. It is a prohibited personnel practice under 5 U.S.C. § 2302(b)(9)(C) to take a personnel action against an employee because that employee engaged in the protected activity of "cooperating with or disclosing information to the [OIG] . . . of an agency, or [OSC], in accordance with applicable provisions of law." As noted above, the Board has concluded that disclosures under section 2302(b)(9)(C) are protected regardless of their content. *Pridgen*, 2022 MSPB 31, ¶ 62. Therefore, the appellant nonfrivolously alleged that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) by filing complaints with OSC in December 2019 and the OIG in May 2020.

*The appellant failed to nonfrivolously allege that she engaged in protected activity in connection with her December 2019 EEO complaint*

¶28    The administrative judge determined that, as with the appellant's December 2019 OSC complaint, she exhausted her administrative remedies regarding her complaint to the agency's EEO office in December 2019, but the complaint was not protected because it concerned allegations of discrimination and did not seek to remedy a violation of 5 U.S.C. § 2302(b)(8). ID at 10-11. We agree.

¶29    In *Edwards v. Department of Labor*, the Board reaffirmed the longstanding principle that disclosures protected under Title VII are not protected under 5 U.S.C. § 2302(b)(8) because employees seeking to remedy reprisal for such disclosures have the right to seek redress through the EEO process. *See Edwards*, 2022 MSPB 9, ¶¶ 10-23, *aff'd*, No. 22-1967 (Fed. Cir. July 7, 2023); *see also*

*Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020) (explaining that the Board lacks jurisdiction in an IRA appeal over a claim of reprisal for filing an EEO complaint). Further, the Board found that an EEO complaint that does not seek to remedy a violation of 5 U.S.C. § 2302(b)(9)(8) is not protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) and thus is not within the Board's jurisdiction over activities falling within the scope of that provision. *Edwards*, 2022 MSPB 9, ¶¶ 24-25. In describing the nature of the claims in her December 2019 EEO complaint, the appellant alleged that she raised claims of "retaliation . . . that was blatantly interwoven with sexism and racism." IAF, Tab 5 at 8, 130, 135. We agree with the administrative judge that because the appellant did not allege that she sought to remedy whistleblower reprisal in her EEO complaint, it was not within the scope of the Board's IRA jurisdiction.

<u>The appellant nonfrivolously alleged that disclosure 1 was a contributing factor in the denied detail opportunity, and she is entitled to a hearing on the merits of that claim.</u>

*Disclosure 1*

¶30    We now turn to the question of whether the appellant nonfrivolously alleged that a disclosure or activity was a contributing factor in the agency's decision not to select her for a detail. *See Skarada*, 2022 MSPB 17, ¶ 19. To satisfy the contributing factor criterion, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the disclosure or activity was one factor that tended to affect the personnel action in any way. *Id.* Whether the appellant's allegations can be proven on the merits is not part of the jurisdictional inquiry. *Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 12 (2010). Generally, the Board will consider an allegation nonfrivolous when, under oath or penalty of perjury, an individual makes an allegation that is more than conclusory, plausible on its face, and material to the legal issues in the appeal. 5 C.F.R. § 1201.4(s).

¶31    One way to establish the contributing factor criterion is the knowledge/timing test, under which an appellant may nonfrivolously allege that the disclosure or activity was a contributing factor in the personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 13 (2016). Regarding the knowledge prong of the test, an appellant may establish, for jurisdictional purposes, that a disclosure or activity was a contributing factor in a personnel action by nonfrivolously alleging that the official taking the personnel action had actual or constructive knowledge of the disclosure or activity. *See Wells v. Department of Homeland Security*, 102 M.S.P.R. 36, ¶ 8 (2006). An appellant may establish an official's constructive knowledge of a protected activity by demonstrating that an individual with actual knowledge of the disclosure or activity influenced the official accused of taking the retaliatory action. *Id.* Also, at the jurisdictional stage, the appellant may be able to establish the knowledge prong even if she did not specifically identify the agency official responsible for a personnel action. *See Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1373-76 (Fed. Cir. 2016) (finding that, given the contextual clues in the record, the petitioner made a nonfrivolous allegation of contributing factor even though he did not specifically identify the agency officials who heard his disclosures); *see also Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶¶ 15-16 (2016) (finding that when the action at issue is a nonselection, an appellant can satisfy her jurisdictional burden regarding contributing factor without specifically identifying which management officials were responsible for the decision).

¶32    Concerning the knowledge prong of the test as applied to disclosure 1, the appellant alleged in her jurisdictional response that she personally informed her

former second-line supervisor about the unsecured server and server backup tapes during the supervisor's in-person visit to the U.S. Consulate in Calgary in December 2019, and that this supervisor was involved in the decision to deny her the detail opportunity. IAF, Tab 5 at 8, 14-15. Accordingly, she has met the knowledge prong of the test.

¶33 Regarding the timing prong of the test, personnel actions that occurred more than 2 years after the alleged disclosure or activity are too remote in time to satisfy the timing prong of the test. *Pridgen*, 2022 MSPB 31, ¶ 63. Accordingly, the appellant has not satisfied the knowledge/timing test as to disclosure 1, which occurred in August 2019, because it was too remote in time to the decision to deny her the detail opportunity over 3 years later, in September 2022.

¶34 However, the knowledge/timing test is not the only way to prove contributing factor. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). If an appellant fails to satisfy the knowledge/timing test, the Board must consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Chambers*, 2022 MSPB 8, ¶ 15; *Dorney*, 117 M.S.P.R. 480, ¶ 15.

¶35 Here, the appellant argued that in addition to her former second-line supervisor to whom she made disclosure 1, her current first- and second-line supervisors were also involved in the decision to deny her the detail opportunity. IAF, Tab 5 at 14-15. She also argued that the evidence supporting her supervisors' stated reasons for denying her the detail opportunity were weak, observing that her first-line supervisor offered several different explanations as to why she was not eligible for the detail even though the external contact for the detail position strongly encouraged her to apply for the position. *Id.* at 15, 158-70. The appellant also noted that her first-line supervisor involved her former second-line supervisor (who was aware of disclosure 1) in the discussion

about the detail opportunity and suggests that her former second-line supervisor may have influenced her first-level supervisor in deciding to deny the appellant the detail opportunity. *Id.* at 15. These assertions challenging the justifications given for denying her the detail opportunity and questioning her second-line supervisor's motives for involving herself in that decision are relevant to the non-knowledge/timing methods for establishing contributing factor. *See Chambers*, 2022 MSPB 8, ¶ 15; *Dorney*, 117 M.S.P.R. 480, ¶ 15.

¶36 Although the agency disputes the appellant's characterization of the importance of the inclusion of her second-line supervisor on these emails and suggests that the appellant's claims amount to "unsubstantiated speculation," IAF, Tab 6 at 10, we disagree. At the jurisdictional stage, an appellant does not need to prove her allegations. *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1367-69 (Fed. Cir. 2020). Rather, she need only allege sufficient facts which, taken as true, "state a claim plausible on its face." *Id.* at 1369. Taking the appellant's allegations as true, and with the recognition that her burden at the jurisdictional stage is a low one, we conclude that she has nonfrivolously alleged that her disclosure of the unsecured server and server backup tapes in disclosure 1 was a contributing factor in the decision to deny her the detail opportunity. *See Usharauli v. Department of Health and Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011) (stating that any doubt or ambiguity as to whether the appellant made a nonfrivolous jurisdictional allegation should be resolved in favor of finding jurisdiction); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (observing that the appellant's burden of making a nonfrivolous allegation is low and requires only a minimally sufficient allegation). Accordingly, remand of this appeal for a hearing on the merits of this claim is appropriate. Although the appellant's allegations are sufficient to meet her jurisdictional burden, we emphasize that, on remand, she must prove by preponderant evidence that this disclosure was a contributing factor in the single covered personnel action. *See generally Salerno*, 123 M.S.P.R. 230, ¶ 5.

*Disclosure 3*

¶37    Regarding the knowledge prong of the knowledge/timing test as it relates to disclosure 3, which concerned the appellant's disclosure of the potential theft of the server backup tapes on or around January 23, 2020, the appellant has not alleged that she informed any of the officials responsible for denying her the detail opportunity of this disclosure, and so she cannot meet the knowledge prong of the knowledge/timing test.[5]    Additionally, the more than 2½-year period between when the appellant disclosed the potential mishandling of the tapes in January 2020 and when she was denied the opportunity to apply for the detail position in September 2022 does not meet the timing prong of the test.  *See Pridgen*, 2022 MSPB 31, ¶ 63.

¶38    We look now for other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. Although we have acknowledged the appellant's argument that the agency's stated reasons for denying her the detail opportunity are weak, she has not otherwise alleged that any of the officials involved in the decision to deny her the detail opportunity had any awareness of the fact that the tapes were mishandled at the time they made their decision—much less that they were involved in the mishandling of the tapes or had any other desire or motive to retaliate against her in connection with this disclosure.  *Dorney*, 117 M.S.P.R. 480, ¶ 15. Accordingly, we conclude that she has failed to nonfrivolously allege that this disclosure was a contributing factor in the detail denial decision, and so she has failed to meet her jurisdictional burden for this claim.

*May 2020 OIG complaint (disclosure 2 and disclosure/protected activity 4)*

---

[5] Additionally, the tapes were not lost or potentially stolen until January 23, 2020, after the date of the appellant's in-person meeting with her former second-line supervisor in December 2019, and so the misplaced tapes could not have been the subject of that in-person conversation.  IAF, Tab 5 at 14-15, 40-43.

¶39 Regarding the timing prong of the test as to the appellant's OIG complaint, the more than 2-year gap between when the appellant contacted the OIG in May 2020 and when she was denied the detail opportunity in September 2022 is too remote to establish contributing factor. *See Pridgen*, 2022 MSPB 31, ¶ 63. With respect to the knowledge prong of the test, the appellant broadly alleged in her OSC complaint that agency officials "intensified retaliation" against her after she engaged in protected activity by, among other things, filing her OIG complaint, but she did not specifically allege that any of the agency officials responsible for denying the detail opportunity were aware of her OIG complaint. IAF, Tab 5 at 8, 134-36. She also does not allege or provide evidence in her jurisdictional response that any of the officials involved in denying the detail opportunity were aware of her OIG complaint. *Id.* at 4-15. Accordingly, the appellant has failed to meet her burden of nonfrivolously alleging that her complaint to OIG was a contributing factor in the decision to deny her the detail opportunity based on the knowledge/timing test.

¶40 The appellant also has not pointed to any other evidence that would support a finding of contributing factor. *Dorney*, 117 M.S.P.R. 480, ¶ 15. None of the officials she identified in her OIG complaint were involved in the decision to deny her the detail opportunity, and she does not allege in her jurisdictional response that any of those officials influenced any of the supervisors responsible for the decision to deny her the detail opportunity, or that any official involved in the detail decision had any motive to retaliate against her because of her disclosure to the OIG. IAF, Tab 5 at 14-15, 66-78; *cf. Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶¶ 6, 9-11, 14 (2012) (concluding that the appellant nonfrivolously alleged contributing factor by showing that the official to whom he allegedly made a protected disclosure influenced the officials who made the nonselection determination at issue). Accordingly, we conclude that the appellant has also failed to establish contributing factor based on evidence other than

knowledge/timing evidence, and so she failed to meet her jurisdictional burden over this claim. *See Dorney*, 117 M.S.P.R. 480, ¶ 15.

*December 2019 OSC complaint*

¶41 As with the other alleged disclosures and activities, the nearly 3-year gap between when the appellant filed her December 2019 OSC complaint and when the agency officials denied her the detail opportunity in September 2022 is too remote to satisfy the timing prong of the knowledge/timing test. *See Pridgen*, 2022 MSPB 31, ¶ 63. With respect to the knowledge prong of the test, as with her OIG complaint, the appellant broadly alleged to OSC that agency officials "intensified retaliation" against her after she filed her prior December 2019 OSC complaint but did not specifically allege that any of the agency officials responsible for denying the detail opportunity were aware of her prior OSC complaint. IAF, Tab 5 at 8, 134-36. Additionally, in her jurisdictional response, the only official that the appellant appears to allege was implicated in her prior OSC complaint is not one of the officials she alleged denied her the detail opportunity. *Id.* at 8. Accordingly, she has failed to meet the knowledge prong of the test.

¶42 Regarding other types of evidence, the appellant has not provided a copy of her December 2019 complaint to OSC, and the only information she has provided about the nature of her prior OSC complaint is her assertion that it concerned alleged harassment by the Counsel General of the Calgary Consulate, who she has not alleged was involved in the decision to deny her the detail opportunity. *Id.* at 8, 14-15. We note, however, that with her jurisdictional response, the appellant has provided an email she sent to OSC dated September 16, 2022, stating that her former second-line supervisor (one of the individuals she alleged was responsible for the decision to deny her the detail opportunity) was "named in [the appellant's] . . . OSC matters" and was retaliating against her by asking her to provide medical documentation for appointments. *Id.* at 153. The appellant does not identify whether the former second-line supervisor was named

in her then-ongoing OSC complaint, or her prior December 2019 OSC complaint, and so it is difficult to discern whether she was alleging to OSC that her former second-line supervisor retaliated against her because of her December 2019 OSC complaint.[6] Accordingly, the vagueness of the appellant's allegations regarding this alleged protected activity and her failure to provide additional context to her claims makes this analysis of the *Dorney* factors difficult.

¶43 As previously noted, the appellant has the burden of establishing jurisdiction over her IRA appeal, which includes the burden of meeting the contributing factor requirement. Although this is a lower burden than that required to prove the merits of her claim, we nevertheless find that she has failed to meet her burden here. Accordingly, we conclude that the appellant has failed to nonfrivolously allege that her December 2019 OSC complaint was a contributing factor in the decision to deny her the detail opportunity.

¶44 In sum, we have made the following findings: the appellant exhausted her administrative remedies regarding her disclosures about the unsecured computer server and server backup tapes in August 2019 (disclosure 1), and the potentially lost or stolen server backup tapes in January 2020 (disclosure 3), as well as her protected activities of filing complaints through the EEO process in December 2019, and with OSC in 2019 and the OIG in May 2020; and she has also exhausted her administrative remedies regarding her claim that she was denied a detail opportunity in September 2022. Further, she has nonfrivolously alleged that she was subjected to a covered personnel action in connection with her nonselection for the detail opportunity and that her disclosures about the unsecured server and backup tapes were protected under 5 U.S.C. § 2302(b)(8), and her complaints to OSC and the OIG were protected under 5 U.S.C. § 2302(b)(9)(C). Additionally, the appellant nonfrivolously alleged that her disclosure of the unsecured server and server backup tapes was a contributing factor in the

---

[6] As we previously noted, however, the appellant did not identify her former second-line supervisor by name in her July 2022 OSC complaint. IAF, Tab 5 at 123-46.

detail nonselection decision, thereby meeting her jurisdictional burden in this IRA appeal. However, the appellant has failed to nonfrivolously allege that her remaining disclosures and protected activities were contributing factors in the decision to deny her the detail opportunity.

¶45    Because the appellant has met her jurisdictional burden with respect to disclosure 1, remand is necessary to provide the appellant with her requested hearing on the merits. On remand, the appellant must prove, by a preponderance of the evidence, that disclosure 1 was a contributing factor in the agency's decision to deny her the detail opportunity. If the appellant makes such a showing, the agency will have the opportunity to prove by clear and convincing evidence that it would have denied her the detail opportunity even in the absence of the appellant's protected disclosure. 5 U.S.C. § 1221(e); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

## ORDER

¶46    For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.[7]

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.

---

[7] In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.